225 So.2d 663 (1969)
Marilyn L. ROLLINS, Individually and as Guardian ad litem of her Minor Children, Lisa C. Rollins and Tish Lorea Rollins, Plaintiff-Appellant,
v.
NEW YORK FIRE AND MARINE UNDERWRITERS, INC. et al., Defendants-Appellees,
Fireman's Fund Insurance Company, Intervenor-Appellant.
No. 2787.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1969.
Rehearing Denied August 26, 1969.
*664 Davidson, Meaux, Onebane & Donohoe, by Robert L. Cabes, Lafayette, for plaintiff-appellant-appellee.
Lewis & Lewis, by John M. Shaw, Opelousas, for intervenor, appellee-appellant.
Dubuisson & Dubuisson, by James T. Guglielmo, Opelousas, Franklin, Moore, Beychock & Cooper, by Charles W. Franklin, Baton Rouge, for defendant-appellee.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge.
This is a suit in tort arising out of an automobile accident which occurred at approximately midnight on July 31, 1966, on U. S. Highway 90 in St. Martin Parish, *665 Louisiana. The accident involved a headon collision between a Cadillac automobile owned and being driven by Luther A. Doss, and a Chevrolet pick-up truck, with a house trailer attached, owned and being driven by Carl Ray Rollins. Both drivers died as a result of the accident. This suit was brought by plaintiff, Marilyn L. Rollins, widow of Carl Ray Rollins, individually and as guardian ad litem of the minor children, Lisa C. Rollins and Tish Lorea Rollins. The defendants are the widow and heirs of Luther A. Doss; New York Fire and Marine Underwriters, Inc., the liability insurer of the Doss vehicle; the McCarthy Corporation, the employer of Luther A. Doss; and Commercial Union Insurance Company, the liability insurer of the employer. Fireman's Fund Insurance Company intervened in this action for reimbursement of workmen's compensation insurance benefits as paid and payable to plaintiff as ordered by the Workmen's Compensation Appeals Board of the State of California.
The case was tried before the Honorable E. L. Guidry, Sr., district judge in and for the 16th Judicial District Court. Subsequently, Judge Guidry retired from the bench, and his son, E. L. Guidry, Jr., was appointed to replace him. By joint motion, this case was submitted to Judge E. L. Guidry, Jr. for decision.
The district court rendered judgment for the plaintiff against the defendants, New York Fire and Marine Underwriters, Inc., Stacia P. Doss, Charles L. Doss, and Linda Doss, in solido, in the amount of $25,200.00, with the liability of New York Fire and Marine Underwriters, Inc. being limited to the sum of $5,200.00; and the liability of the minor, Linda Jo Doss, being limited so as not to exceed her net interest in the estate of her deceased father, Luther A. Doss. Judgment was rendered against plaintiff and in favor of McCarty Corporation and Commercial Union Insurance Company, dismissing plaintiff's suit as against these defendants. Judgment was further rendered in favor of the intervenor, Fireman's Fund Insurance Company, by preference and priority over plaintiff to the extent of its payment and obligation for payment of workmen's compensation benefits in the amount of $21,700.00. A new trial was granted, limited to the issue of the liability of the Doss heirs, who had accepted the succession of Luther A. Doss. An amended judgment was then rendered making the liability of Stacia P. Doss, Charles L. Doss and Linda Jo Doss joint, rather than in solido, limiting the liability of each on the judgment to their respective interest in the succession, and with the liability of the minor, Linda Jo Doss, in no event to exceed her net interest in the estate of her father.
From this judgment plaintiff and intervenor have filed an appeal. The defendants, Stacia P. Doss, Linda Jo Doss and Charles L. Doss, filed an answer to the appeal.
The issues involved in this case are:
1. Whether or not the sole and proximate cause of the accident was the negligence of Luther A. Doss;
2. Whether or not Luther A. Doss was in the course and scope of his employment with the McCarty Corporation at the time of the accident, so as to impose vicarious liability upon the McCarty Corporation and its insurer; and
3. Quantum.
The record shows that the accident occurred about midnight on July 31, 1966, on U. S. Highway 90 between Broussard and Cade in St. Martin Parish. Carl Ray Rollins was driving a 1965 Chevrolet pick-up truck, with a house trailer attached, in an easterly direction along Highway 90 toward New Iberia. The Rollins truck collided almost head-on with a 1966 Cadillac automobile owned and being driven by Luther A. Doss, who was proceeding westerly along Highway 90 toward Lafayette. The highway in the area involved is straight, but there is a large dip in the road. At the time of the accident, the night was dark, *666 the weather was clear, and the highway was dry. The speed limit in the area is 60 miles per hour for automobiles, and 45 miles per hour for trucks.
There were no passengers in the two vehicles involved in the collision, and the two drivers died as a result of the accident. The only other vehicles in the immediate vicinity at the time of the accident was an automobile being driven by George Vidrine, who was proceeding in an easterly direction immediately ahead of the Rollins truck. George Vidrine was subpoenaed to testify at the trial of the case, but could not be found. His testimony had previously been taken by deposition, which was introduced into evidence at the trial, over the objection of counsel for defendants. According to Vidrine, he was traveling easterly on Highway 90, passed the Rollins truck some ten to twelve minutes before the accident, and was proceeding along the highway at a distance of about four or five car lengths ahead of the Rollins truck at the time of the accident. The deponent, George Vidrine, testified he saw the headlights of the Doss vehicle slowly moving into his lane of travel at an angle across the highway, and as the Doss vehicle strayed over the center line of the highway, he turned quickly off the highway onto the shoulder of the road. He testified he just barely avoided a collision with the Doss vehicle himself, that the Doss vehicle was in the wrong lane of travel on the highway as it passed him. Then he heard the crash of the vehicles colliding immediately behind him. He did not see the actual impact as he was concerned with his own safety and was in the process of getting out of the way and off on the shoulder of the road.
The investigating state trooper, Sgt. Charles J. Melancon, testified as to the physical facts as found by him at the scene of the accident. When he arrived, Mr. Rollins was still in the truck, which was in flames, and a firetruck was putting out the fire. Mr. Doss was slumped over his steering wheel and was dead. Both vehicles were heavily damaged, and the major damage to the pick-up truck was to its right front; and the damage to the Cadillac automobile was to its left front. Sgt. Melancon testified that all of the debris left from the vehicles on collision was located on the south side of the highway in the eastbound lane of travel, and that the westbound lane was free of debris. He testified that the collision was so hard there were gouges left in the highway in the pick-up truck's lane of travel. He talked with George Vidrine and saw the markings on the road and shoulder where Vidrine's car ran off the highway to the south side of the road. It was his opinion that the two vehicles met almost head-on in the eastbound lane of traffic.
It was stipulated that the testimony of two other state troopers, who participated in the investigation, would be substantially the same as that of Sgt. Melancon. There is no other evidence in the record concerning the facts of the accident other than the testimony of Sgt. Melancon and the deposition of Mr. Vidrine.
The district court had little difficulty in finding plaintiff had proved by a preponderance of the evidence that the accident in question occurred in the eastbound lane of travel, and that it was caused solely and proximately by the negligence of Luther A. Doss.
The law is well settled that the driver of the vehicle determined to be in the wrong lane of travel is presumed to be negligent, and he had the burden of showing that the collision was not caused by his negligence, or that there were justifiable circumstances excusing his conduct.
The evidence in this case clearly shows that the vehicle of Luther A. Doss crossed the center line of the highway to collide with the Rollins truck in the eastbound lane of travel, and no evidence was offered to justify his presence in the wrong lane of travel. Under these facts and circumstances, this Court concurs with the holding of the district court that the accident *667 herein was caused solely and proximately by the negligence of Luther A. Doss.
The next issue is whether or not Luther A. Doss was in the course and scope of his employment with the McCarty Corporation at the time of the accident. The facts relating to this issue are as follows: Luther A. Doss was a member of the Asbestos Workers Local No. 53 of New Orleans and Baton Rouge, and was classified as a mechanic. The McCarty Corporation is a member of the Master Insulators Association of New Orleans and Baton Rouge, La., Inc. The McCarty Corporation was performing certain insulating work as a subcontractor on a construction job in the City of New Iberia, hereinafter referred to as the "school job". On July 29, 1966, Mr. Roy Bourgeois, a union employee, acting as foreman for the McCarty Corporation on the school job, was contacted by Marino and Sons, the contractor on the job, and was advised that they were running behind time and needed to put in some overtime over the weekend in order to beat an impending strike by the pipefitters union. Bourgeois had been working ten men on the McCarty job; however, one employee had just quit. Bourgeois agreed to comply with Marino's request to work overtime and to hire an additional mechanic to replace the employee who had quit. He was unable to contact the supervisor of the McCarty Corporation, Mr. Thomas Borskey, for specific authority to hire the extra mechanic, but took it upon himself to do so, believing his action in so doing would be later ratified. In lieu of securing another mechanic through the business agent or assistant business agent of the union, Bourgeois telephoned his friend, Luther A. Doss, at his home in Baton Rouge, and asked him if he wanted to work the weekend. In explanation of his action in not going through the business agent or union steward to secure this additional mechanic, Bourgeois stated that union work was sought after because of the lucrative overtime pay, and he wished to repay similar favors extended to him by Doss, when on previous occasions, the latter was acting in the capacity of foreman. Luther A. Doss complied with the request of Bourgeois, traveling from Baton Rouge to New Iberia to report for work at 7:00 A. M. on the morning of July 30, 1966. Mr. Doss worked ten hours on that Saturday, spent the night in New Iberia, and then worked ten hours on Sunday, July 31, 1966. According to the record, in answer to an interrogatory by plaintiff to defendant, Luther A. Doss was scheduled to go to work for the McCarty Corporation on Monday, August 1, 1966, at 8:00 A. M. at the Humble Refinery in Baton Rouge. At the end of the work day of July 31, 1966, at approximately 5:00 P. M., the members of the Bourgeois crew, including Luther A. Doss, went to the Casablanca Club in New Iberia for the purpose of having a few drinks. Mr. Doss, together with the various members of the Bourgeois crew, remained at this cocktail lounge until it closed some time shortly before midnight, during which time Mr. Doss drank, according to the estimate of several witnesses, seven or eight drinks described as scotch whiskey and milk. After the Casablanca Club closed, Mr. Doss, in the company of the proprietress and her husband, and another lady, visited another bar in the vicinity and had another drink, whereupon he left with the stated intention of returning to Baton Rouge. Shortly following his departure, which was fixed by the witnesses as just before or after the hour of midnight of July 31, 1966, the fatal accident occurred.
A contract between the Asbestos Workers Union and the Master Insulators Association, effective for the period of July 13, 1966, to June 9, 1969, was filed in evidence. The pertinent articles of that contract are Articles IX and X, which provide for extra benefits which an employee is to receive in the way of subsistence and travel allowance. Article IX provides:
"Employees shall receive board when on jobs requiring same in the amount of Seven Dollars ($7.00) per day and shall receive railroad transportation and local *668 car or bus fares in excess of two city fares daily figured from New Orleans & Baton Rouge, La. City Hall to job and return to City Hall. Night traveling shall be paid for at single time, except in cases where berth is provided, when no traveling time shall be paid. When boarding on out-of-town jobs they shall receive all transportation expenses expended.
"Board shall be paid on jobs situated thirty (30) or more radius miles from the City Hall of New Orleans or Baton Rouge in the amount of $7.00 per work day. * * *."
Article X of the contract provides for "travel allowance" for union members working on jobs located in excess of eight miles, but within thirty miles, of Baton Rouge and New Orleans.
The provisions of the union contract are to some extent confusing and ambiguous. The record shows that as a matter of practice and custom, on "board" jobs, the union employee was entitled to travel allowance calculated as follows: On the day that the employee first reports to the job for work, he is entitled to the amount of "bus fare" from the City Hall of Baton Rouge or New Orleans, as the case may be, to the job site, plus "travel time", which is the employee's single time rate for the calculated time for the bus trip. In other words, on his first day on a job, an employee living in Baton Rouge and traveling to a job site in New Iberia would be entitled to bus fare from Baton Rouge to New Iberia, plus 2½ hours at his single time wage rate. This same allowance is by custom and practice paid to the employee for his return trip when the job is completed; however, the employee would not be entitled to the return allowance if for some reason he elects to quit work on that particular job before it is completed. This was the interpretation of the union contract, as adopted by custom and practice, followed by both the union and the employers.
The evidence in this case was in conflict with regard to whether or not the union contract, insofar as travel allowance was concerned, would be applicable to a weekend job; however, the evidence indicates that, whether Mr. Doss was entitled to such an allowance or not, he was in fact paid travel time, of 2½ hours at his regular rate of $4.35 for his trip to the job site in New Iberia from Baton Rouge, although he was not paid the amount of the bus fare as contemplated by the union contract. His time card did not indicate that he was authorized travel time or travel expense for his return trip to Baton Rouge.
Certain interrogatories were propounded by plaintiff and answered by defendants. Interrogatory no. 5 asked, "When Luther A. Doss worked away from the premises of the McCarty Corporation, was he compensated for mileage or paid travel time on any basis? If so, please state on what basis he was paid?" The defendant, considering that one of the bases of such employment might be the union contract, answered "According to Union Contract". The next interrogatory follows, "Was the employment of Luther A. Doss controlled by a labor union contract? If so, please state the terms of the said contract pertaining to travel time and mileage?" The answer was, "Yes, refer to contract for terms."
The record shows there was also a practice which occurred, sometimes characterized as a "Buddy-Buddy" deal where there is an employment of a union member on the direct call of another member, rather than through the business agent or assistant business agent of the union. According to the custom and practice, an employee hired on such a "Buddy-Buddy" deal would not be entitled to any additional compensation in the way of travel expense or travel time over and above his hourly pay. The foreman on the job, Bourgeois, testified that he hired Luther A. Doss on such a "Buddy-Buddy" deal. The contract engineer for the company had certain discretion in offering a bonus in order to obtain skilled workers, which were difficult to get, and it is shown that travel time to a job was often given as a bonus on such a "Buddy-Buddy" *669 deal, although travel time was not paid upon completion of the weekend work for the employee to return home.
The record shows that the contract engineer on the school job for the McCarty Corporation had only about thirty days experience as a contract engineer, and had been on the school job only ten days. At that time, he had no knowledge of the terms of the union contract and had never read it. When he turned in the time to the Baton Rouge office on the Monday morning following the accident herein, he thought Luther A. Doss was entitled to the travel time to the job in accordance with the payment to the other employees, and submitted, in addition to the hourly pay for the weekend at double time, a figure of $24.88 for travel expense. This term could be either board or travel time or travel expense, or a combination of these items. This figure included $7.00 per day board for the two days of the weekend, plus $10.88, which was travel time of 2½ hours from Baton Rouge to New Iberia at the straight hourly rate of $4.35. The record also shows that the McCarty Corporation made certain deductions and remitted certain funds to the union as required by the union for the hours worked by Doss over the weekend of July 30 and 31, 1966.
Bourgeois testified that Doss was not entitled to travel time back to Baton Rouge since he had been hired on a "Buddy-Buddy" deal, and that even if he had been hired under the union contract, he would not be entitled to travel time back to Baton Rouge since the school job had not been completed.
The evidence shows that Does could have continued his employment on the school job if he elected, or he could have gone to the job in Baton Rouge where he was scheduled to work on Monday morning, or he could have worked anywhere else he chose. He was "on his own", so to speak, and was not required to work at any place. He was not subject to being discharged or fired if he failed to appear for the job in Baton Rouge. Since Doss was a union man working under the union contract, he could have worked any place the union would have sent him, and if the union had sent him to any other of its jobs, the McCarty Corporation would have had to employ him.
Plaintiff maintains that Doss was in the course and scope of his employment at the time of the accident, and that this imposes vicarious liability on his employer, the McCarty Corporation, and its insurer, Commercial Union Insurance Company. It is maintained that this issue centers on the crucial question of whether Doss was entitled to travel pay on his trip from New Iberia to Baton Rouge. Plaintiff points out that Doss was paid travel expenses for his trip from Baton Rouge to the school job in New Iberia, and maintains that he was entitled to be paid a travel allowance for his return trip to Baton Rouge under the terms of the union contract and by the custom and practice in the industry. It was urged that it was in the best interest of the company for Doss to have been employed for the weekend in New Iberia, and it was to the company's benefit that Doss was to be paid for the trip to New Iberia and back to Baton Rouge so he could report to work for the McCarty Corporation the following Monday morning. For this purpose, it was necessary for him to return to Baton Rouge on Sunday night, at which time the accident occurred. The defendants maintain that Doss was not in the course and scope of his employment; that he had completed the special job he had worked on over the weekend; that he was hired under special circumstances by a friend of his under the so-called "Buddy-Buddy" system; that even if the union contract terms and provisions were applicable, which is and has been denied, the union contract is silent as to the payment of travel time; that even if the union contract did contemplate paying travel time for ordinary jobs, it was not applicable to a weekend job, such as the one at hand; and even then, if travel time were due, it would not automatically cause Doss to be in the scope of his employment at the time of the accident. Defendants further contend that while Doss was scheduled to *670 work on another job for the McCarty Corporation at the Humble Plant in Baton Rouge, he was not a salaried employee ordered to go to Humble; that he could have stayed at New Iberia if he had chosen to do so; that even if Doss had failed to appear at the Humble job on Monday morning, August 1, 1966, he would not and could not have been fired; that he would not be in any trouble with the union, and that the choice was strictly his.
In Louisiana the doctrine of respondeat superior is set forth in LSA-C.C. Articles 176, 2317 and 2320, the latter of which states that "employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed". As has been stated many times in the jurisprudence and by textbook writers, there is no precise rule or definition by which we can determine in every instance whether the employee driver of a motor vehicle is acting within the scope of his employment. Each case must be decided largely on its own facts, keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer or while about the employer's business. Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Volume 5, Section 3006; 35 Am.Jur. 986, verbo, Master and Servant, Section 553.
The general rule is that an employee, in going to and from his place of employment, is not considered as acting within the scope of his employment to such an extent as to render his employer liable to third persons for the employee's negligent acts. See Wills v. Correge, 148 So.2d 822 (La.App. 4 Cir. 1963), and cases cited therein.
An exception to this general rule arises in those instances where a factual showing can be made that the use of the motor vehicle by the employee, whether personally owned or owned by the employer, was being used in the service of the employer or while about the employer's business. Plaintiff in this case relies primarily upon the case of O'Brien v. Traders and General Insurance Company, 136 So.2d 852 (La.App. 1 Cir. 1961), which falls within that exception.
This Court has carefully considered the facts of the case before us on appeal, in the light of the jurisprudence of this State, and finds that this case falls within the general rule of law as stated, and not within the exception.
Plaintiff's main premise is that Doss was entitled to travel expense for his return trip to Baton Rouge in accordance with the terms of the union contract. However, the record does not establish this. In the first place, it appears that his employment was not fully covered by the union contract, and he was not entitled to all of its provisions during his weekend employment, since he had been hired under the so-called "Buddy-Buddy" system. Even assuming that he was entitled to all of the benefits of the union contract, the record shows he was not entitled to any travel expense for his return trip to Baton Rouge. The provisions of the union contract are to some extent confusing and ambiguous, and accordingly, we believe that the interpretation of the contract as adopted by the custom and practice in the industry should be controlling. Under this interpretation, he would not be entitled to any pay for the return trip to Baton Rouge since the school job was not completed. Nor did the evidence establish that there was any special hiring agreement whereby Doss was to receive travel expense or travel time for the return trip.
In any event, there are more factors to be considered than this one in determining whether the return trip to Baton Rouge would serve the employer or his business to the extent that the employer could be held responsible in tort to third parties under the doctrine of respondeat superior. No one factor is necessarily controlling.
In this case, there are additional factors to be considered. Although Doss was scheduled for work with the same employer *671 in Baton Rouge on Monday morning, he was not a salaried employee and could not be ordered to report to work at any particular job by the employer. The record shows he was "on his own" so to speak after he completed the weekend job in New Iberia. As a union man, he could have elected to work anywhere the union might send him, or to have not worked at all, and he was subject to no sanction by the McCarty Corporation.
The record also shows that the employer had no control over the means of transportation which Doss might use in returning home. It did not furnish Doss with an automobile and Doss' use of his own automobile was of no value to the employer in the conduct of its business. Even assuming the application of the union contract, it is noted that this contract provides for railroad transportation and local car and bus fares, and does not contemplate reimbursement of travel expenses for the use of the employee's automobiles.
Plaintiff has relied mainly on the O'Brien case, supra. In that case the employee, a county agent, was a salaried employee of the L.S.U. Agricultural Extension Service, and was en route to Baton Rouge to attend a meeting scheduled for the following morning which he had been ordered to attend, when he was involved in an automobile accident. The issue in that case was whether the employer was responsible in tort to plaintiff because of the negligence of the county agent. The county agent was free to choose any mode of transportation and was to be paid mileage at 2¢ per mile from his home in Winnsboro to Baton Rouge. He had left his home on Saturday, proceeding to Simpson, Louisiana, where he spent the night, and the following day as the guest of his mother-in-law, and was then proceeding to Baton Rouge at the time of the accident. He did not normally work on Sundays, and was not required to account for his action during his time off. The route he was taking was not the shortest route available from his home to Baton Rouge. The court recognized the general rule that an employee is not considered as acting within the course and scope of his employment when going to and from his place of employment, but found from the facts of that case, that the county agent was on a mission in the futherance of the interests of his employer, was being compensated for his time and expenses while on the trip, and was, accordingly, in the course and scope of his employer's business at the time of the accident.
The O'Brien case, supra, is distinguishable from the case at bar in several respects. In the O'Brien case, the employee was a regular salaried employee of defendant, was subject to the orders and directions of his employer and had been required to attend the meeting, was on a mission contemplated by his employer in the furtherance of the employer's interests, and was being compensated for his time and reimbursed for his expenses in making the trip. On the other hand, in the case before us on appeal, Doss was a union member who elected to take a weekend job at double time which he was not required to take. As a union member, he was on his own and was not subject to being ordered to Baton Rouge to work, or to return to Baton Rouge to work or not to work at all. Under the terms of his employment, he was not entitled to travel time or travel expenses back to Baton Rouge. However, even assuming the union contract was applicable, and assuming it provided for travel expenses, it contemplated only bus fare and travel time, and the use of the employee's car was for the convenience of the employee, and did not benefit the employer.
Considering all of the facts and circumstances of the case before us for decision, this Court finds, as did the district court, that Doss was not acting in the course and scope of his employment with the McCarty Corporation at the time of the accident herein so as to impose vicarious liability on his said employer and its insurer.
The last issue for our consideration concerns quantum. In fixing the amount of *672 the award to plaintiff, the district court took into consideration the financial circumstances of the widow and heirs of Luther A. Doss and their ability to respond in judgment for any amount awarded in excess of the $5,200.00 limited liability of the insurer of the Doss vehicle. The district court considered that Mrs. Doss and her two children could have absolved themselves of all liability to plaintiff by renouncing the community of acquets and gains with and the succession of Doss, and found that they should, under the circumstances, respond in judgment to an amount approximating the net value of the community and the estate of Doss. It was on this basis that the court awarded the total sum of $25,200.00 in an effort to do substantial justice between the parties.
Plaintiff maintains the trial court erred in limiting the quantum owed to plaintiff, and that, under the facts of this case, and considering the loss of love and affection suffered on the part of the widow and her two small children, and the earning capacity of Carl Ray Rollins, an award of at least $25,000.00 should be made to the widow and $15,000.00 to each of the two children, even recognizing the financial condition of defendants. Defendants maintain the district court did not abuse its discretion in limiting the award as it did, and that its judgment should be affirmed.
The record shows that at the time of his death, Rollins was 20 years of age. He was survived by a widow, aged 19, and there are two small children born of their marriage. Mr. and Mrs. Rollins had been married about three years and enjoyed a very contented and happy married life. At the time of his death, Rollins was employed as an industrial radiographer. He had earned approximately $7,200.00 for the year 1965, and for the year 1966 to the date of his death, he had grossed approximately $5,000.00. Considering Rollins' age, the opportunities in his field of employment, and the fact that a union contract was being negotiated, which would raise his pay scale, his earnings would have likely increased substantially over the years. His earnings included a per diem of $11.00 per day. In addition to these earnings, Rollins was paid a monthly rental by his employer for the use of his pick-up truck in the amount of $100.00 per month, and the employer furnished all gas and oil for the operation of the truck. The special losses as reflected in the record amounted to $2,689.65, which include funeral and burial expenses, and the deductible loss to his truck and trailer.
According to the sworn descriptive list filed in the succession of Doss, the community of acquets and gains existing between Mr. and Mrs. Doss had a net value of $21,377.92. Doss apparently died without separate property, and his net estate was valued at $10,688.96. At the time of the trial, Mrs. Doss was earning $216.00 per month working at a bowling alley. Her daughter, Linda Jo Doss, was earning $50.00 per week, and her son, Charles L. Doss, was employed as an asbestos worker, but he only worked irregularly, and earned an estimated $350.00 per month. Mrs. Doss lives in a modest home in the Legion Village area in Baton Rouge built after World War II for veterans.
Under these circumstances, this Court finds that the district court was correct in taking into consideration defendants' inability to respond to damages in arriving at an award. The Courts of Louisiana have uniformly held that the ability of defendant to respond in damages will be taken into consideration in determining the amount of the judgment. See Monger v. McFarlain, 204 So.2d 86 (La. App. 3 Cir. 1967), writs denied, 251 La. 686, 205 So.2d 605; and Urk v. Southern Farm Bureau Casualty Insurance Company, 181 So.2d 69 (La.App. 2 Cir. 1965), writs denied, 248 La. 909, 182 So.2d 661, and cases cited therein.
This Court is in sympathy with the great loss sustained by plaintiff and her children, and it is regrettable that there was not more insurance coverage in this *673 case. However, after giving full consideration to the application of the above legal principle in relationship to the financial condition of defendants, this Court finds that the district court did not abuse its discretion in limiting the total award for damages to only $25,200.00.
For the reasons assigned, the judgment of the district court is affirmed, and all costs of appeal are assessed against appellant.
Affirmed.
TATE, Judge (concurring).
The writer concurs in the result reached.
The principal issue is whether the dead tort-feasor, Doss, was driving in the course of his employment with McCarty at the time of the accident. If so, McCarty and its insurer are liable for the really substantial damages caused the Rollins' survivors through the tortious death of their husband and father.[1]
My chief disagreement with the majority is in its holding that the union contract's provision is ambiguous. We reject the plaintiff's contention that it provides for Doss' right to receive travel-pay from McCarty for his return trip to Baton Rouge. During this trip, he was involved in the collision which killed both himself and the plaintiff's decedent.
As I read the contract, it fairly clearly provides that Doss was entitled to be compensated at single-time on his return trip from the out-of-town New Iberia Job. See contract provision quoted in majority opinion. Also, another employee similarly situated did receive such return-travel pay time, and Doss himself was paid for his time going to New Iberia and probably would have been paid for the return trip too, had he completed it.
Since Doss was entitled to be paid by his employer as he drove from the McCarty weekend job in New Iberia back to a regular McCarty job in Baton Rouge, our decision is in apparent conflict with the principle enunciated by our brothers of the First Circuit in O'Brien v. Traders and General Insurance Co., La.App., 136 So.2d 852, 864: that an employee should be considered within the scope of his employment when his employer is paying for his mileage and compensating him for the time. As the court stated: "What better evidence is there that the employee is on a mission for his employer or is within the scope of his employment than the fact that the employer is compensating him for his services at that time?"
Ultimately, however, the writer inclines to the view that our majority ruling is right, despite its conflict with O'Brien, under the circumstances of this case. The basic conceptual reason for the master's liability for the torts of his servant is the master's theoretical right of control. Civil Code Article 2320; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902, 905.
In modern times this conceptual requirement has been relaxed, in view of the demands of modern commerce and the needs of society that an enterprise pay the costs of the damages sustained through its operations. Blanchard v. Ogima, cited above. Nevertheless, this conceptual background is an explanation why, for instance, the master may not be held liable for a tort caused when the servant grossly deviates from the scope of his employment, even though the latter is drawing pay at the time.
Similarly, in the present instance, Doss may have been entitled to pay, but this was in the nature of a fringe benefit, like vacation pay, which did not have to do with the performance of services or with an *674 employment duty to report somewhere. He could go back to Baton Rouge, if he wished, or he could have gone to Lake Charles to work for someone else, but he was still entitled to single-time pay for a return trip to Baton Rouge.
The several factors mentioned by the majority in distinguishing the O'Brien facts seem to me to be appropriate reasons not here to apply mechanically the O'Brien rule that an employee being compensated for his travel time is therefore in the course of his employment (albeit this represents a presumption and the usual rule). Nevertheless, it seems to me that we should recognize that the present employee was entitled to compensation for his travel, and thus be brought to face with the apparent conflict of the principle applied by us with that applied in O'Brien.
For these reasons, I respectfully concur in the majority opinion.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., concurs in denial for reasons stated in his original concurring opinion.
MILLER, J., concurs in denial for reasons stated in the original concurring opinion by TATE, J.
NOTES
[1] The damages actually allowed against the tort-feasor's survivors individually were reduced so as just to amount to the small property value of his estate, which they had accepted unconditionally. The reduction was made on the basis of the unique Louisiana doctrine that a tort-feasor's inability to pay is a factor in the award. Our Supreme Court has not in recent years re-examined its enunciation of this doctrine, but our court has recently adhered to it.