LOTTINGER, Judge.
This is a suit in workmen’s compensation by Mrs. Rose Mae Adams LaCoste, individually and on behalf of her minor children, against Sewart Machine Works, Inc., Sew-art Seacraft, Inc., and their workmen’s compensation insurer, Travelers Insurance Company. The Lower Court rendered judgment in favor of defendants and against petitioner, dismissing petitioner’s demand.
The original petition filed herein on April 13, 1967, was against Sewart Machine Works, Inc., hereafter referred to as Sewart Machine, and its workmen’s compensation insurer, Travelers Insurance Company, hereinafter referred to as Travelers. The suit is for benefits for the alleged death of petitioner’s husband which occurred on April 14, 1966, while allegedly within the course and scope of his employment with Sewart Machine.
Subsequently, on August 31, 1967, an amended petition was filed wherein Sewart Seacraft, Inc., and its insurer, Travelers, was brought into the suit as party defendants.
*263 Although both Sewart Machine and Sew-art Seacraft were named as party defendants, the record indicates that both corporations were liquidated before this suit was filed, and, therefore, defendant, Travelers, as the alleged workmen’s compensation insurance carrier of both corporations at the time of the death of Mr. LaCoste, is the sole defendant before the Court.
In its reasons for judgment, with which we are in full accord, the Lower Court said:
“Sewart Machine Works, Inc., a Louisiana Corporation, domiciled and doing business in St. Mary Parish, Louisiana, was a service corporation. Its business consisted primarily of doing lathe and machine work on boats being built by Sewart Seacraft, Inc., and in furnishing crews and supplies for various vessels, under contract with the owners of the vessel.
Sewart Seacraft, Inc., was a Louisiana Corporation, domiciled and doing business in St. Mary Parish, Louisiana, whose principal business was constructing boats, mostly aluminum boats, to its customers, the oil companies and the government.
For several years prior to and at the time of his death, Ivy LaCoste had been employed by Sewart Machine Works, Inc., as a Master or Captain of a Crew, on a vessel owned by some corporation with which Machine Works had a contract. At the time of his death, and for some period prior thereto, LaCoste was so employed aboard the motor vessel “Dianne-B”. He was an alternate Captain. He worked seven days on and would be off seven days. He was paid $550.00 per month for these duties. The vessel, “Dianne-B”, was based in Venice, Louisiana, and Mr. LaCoste, and the other members of the crew, would have to go to Venice to meet the boat, relieve the other crew, and begin work on his seven days shift. He could travel to and from Venice, Louisiana, in any manner he chose. Sewart Machine Works did not direct his mode of travel; neither did they pay or reimburse him for any of his travel time. His work began when he relieved the other captain. There is no question that his primary occupation was that of a Master or Captain of a crew or a seaman, at these times. He was not furnished any vehicle or transportation for his use in going to or from Venice. Rather, he always used his own vehicle to do so.
On January 30, 1964, Mr. LaCoste commenced work for Sewart Seacraft, Inc., as a fitter, in the company’s yard at Bayou Vista, in St. Mary Parish, Louisiana. He continued this work, on his time off, until his death. • His work for this employer, was less than full time, the evidence showing that he did not work a full day, every day, on his days off. In other words, Mr. LaCoste, actually had two employers. He worked regularly for Sewart Machine Works, Inc. as a Master or Captain on a vessel, for seven days and then he would be off for seven days. On these days off, he would supplement his income by working as a fitter for Sewart Seacraft, Inc., on an hourly basis of $2.12 per hour. The evidence shows, however, that his work with Seacraft was irregular in that he did not work every day of his seven days off, and sometimes did not work an entire day.
On April 14, 1966, Ivy LaCoste left his home in Morgan City, in his own personal car, to drive to Venice to meet the “Dianne-B”, to begin his work for Se-wart Machine Works. When he reached Plaquemines Parish, he was run into by another car and killed instantly. The above facts are clearly established by the evidence.
In order to prevail in this litigation, plaintiffs must prove, by a preponderance of the evidence that decedent, Ivy LaCoste, died as a result of injuries received in an accident which occurred *264 while he was within the course and scope of his employment. RS 23:1031.
Plaintiffs seek to do so by attempting to show, first, decedent’s dual employment, and secondly, that on the date of his death, he was transporting a small motor from one of his employers to the vessel “Dianne-B”, and therefore, was on a mission for his employer, which would bring him within the course and scope of his employment.
Plaintiff’s attempt to show this, as follows : First, decedent’s widow, Mrs. LaCoste, testified that she saw a small motor of some kind in the trunk of decedent’s car. She stated that decedent told her that ‘he had to leave the next morning to go deliver this motor to the boat.’ (TR. 27) He did not tell her what he was going to do with it, or to which boat it was being brought to. (TR. 28-29). She stated that on occasion, he had brought other supplies to the boat. She did not know who owned the motor, what kind it was, where it came from or where it was going. (TR 29 and 37). All she knew of her own independent knowledge was that there was a small motor in the trunk of her husband’s car. The rest, she was uncertain of, and was also hearsay.
Mr. Paul LaCoste, brother of decedent, testified that he, too, worked for Sewart Seacraft and Sewart Machine Wks., Inc., at the time of his brothers death, under a similar arrangement. He stated that he went to Plaquemines Parish the day of the accident and found in decedent’s car, a small motor, amongst other objects. The motor could be used for a number of uses aboard a boat. (TR 47). He testified that on occasion, he had brought items to other boats for other crews. (TR. 56, 60). In response to questions by the Court, he testified that in going to and from Morgan City to Venice, to go to the boat, he never received any mileage or travel expenses, no hourly wages for travel time, and that his ‘hitch’ or tour of duty began when he got to the boat in Venice and relieved the other captain. (TR 57-58). He did not know who owned the little motor, but he did know that it was not a new, but rather a used motor, (TR 51), and usually, on such a small item, it would not be repaired, but replaced with a new motor. He remembered a specific occasion when Ivy LaCoste had brought some wheels to a boat working right next to him (TR 60).
Mr. Leonard E. Davis, a close friend and former coworker of decedent, was with him at his home just before he left to go to work, early in the morning of April 14, 1966; concerning the motor, he knew only what the decedent told him, and the Court sustained an objection to this as hearsay. However, on an offer of proof, he knew only that decedent said he was going to take a motor to a boat, nothing else.
Defendant, of course, strenuously denies that decedent was on any such mission for either employer. Mrs. Mona Roder testified that a thorough investigation had been made to determine whether any such motor had been bought or sent to the “Dianne-B” around the time of decedent’s death, with negative results. As secretary-treasurer and office manager of both corporations, she would have received the invoices for any purchases and signed the checks and kept the record of payment of any such motor; however, no record under her control indicated any such motor was ever purchased, repaired or sent. She testified that Ivy LaCoste worked for Sewart Machine Works, Inc. strictly as a master or captain of a vessel, for a monthly salary of $550.00. The company gave him no travel expenses; provided him with no auto, and gave him no hourly wages as travel time on his trips to and from his home in Morgan City to Venice. His ‘hitch’ or tour of duty began when he relieved the other captain on the boat in Venice, and he could have either lived *265 there or anywhere else. His method of transportation to Venice was strictly of his own choosing.
She further testified that for Sewart Seacraft, Inc., he worked as a rigger, in the yard at Bayou Vista. He punched a clock when he went to work and punched out when he left. He was paid hourly wages when he worked. He never punched in on the day he was killed. He did not work every day on his days off. She testified that no individual or supervisor from Sewart Seacraft could have sent LaCoste on a mission to Venice to deliver a motor to a boat because Sewart Seacraft had nothing to do with those boats. Seacraft is a manufacturer of new boats and had nothing whatever to do with maintaining and supplying crew boats. (TR 97). When Ivy La-Coste ‘clocked out in the afternoon at 5:00 o’clock’ (the day before he was killed) he was off work for Seacraft. The next morning he was to go to work as a captain for Machine Works, (TR 98); and that on the date he was killed he was on his way to Venice to meet the “Dianne B” to relieve the other captain, and go to work. (TR99).
Taking all of the testimony as a whole, the Court finds that plaintiffs have not proven, as a matter of fact, that on the day he died, Ivy LaCoste was on a mission for either of his employers. The rule of law, or test in cases such as these, is that as a general rule, an employee in going to and from his place of employment is not considered as acting within the course and scope of his employment. Wills v. Correge, 148 So.2d 822 (Ct.App. 4th Ct.) and authorities cited therein.
And, in O’Brien v. Traders and General Insurance Company, 136 So.2d 852 (Ct.App. 1st Ct.), it was stated, at page 864, after reviewing the jurisprudence, that,
‘Conversely, where an employee is not compensated for his time or is not supplied with a vehicle by his employer to go to and from work, it is clear that at that time the employee is not engaged on a mission for his master, but is, so to speak, on his own.’
In the Wills’ case, supra, where the Court found that the vehicle was not furnished, nor where the expenses paid by the employer, that the employee was not on a mission for his employer, and the case fell under the general rule.
In accord, see Sholars v. Campbell Construction Company, 191 So.2d 684 (Ct.App. 2nd Ct.) and Rollins v. New York Fire and Marine Underwriters, Inc., 225 So.2d 663 (Ct.App. 3 Ct.1969).
Applying these tests to this case, the Court finds that neither employer furnished Ivy LaCoste with a vehicle, travel expenses, hourly wages, or directed the mode of transportation to Venice. He could not have been on a mission for Sewart Seacraft, because that company had nothing to do with supplying or maintaining vessels, and he had ‘punched out’ at 5:00 o’clock P.M. the previous day. Having found that plaintiffs failed to prove a mission, by having failed to prove who owned the motor, who, if anyone, authorized LaCoste to transport it; the destination or party to whom it was to be delivered, or its source, it follows necessarily that plaintiff has failed to prove any mission at all, so as to hold either employer liable.”
We have examined the record and find no error in the reasons as assigned by the Lower Court. Accordingly, for the said reasons, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.