HOOD, Judge.
Nolton LeDoux, individually and as administrator of the estate of his minor child, Frances LeDoux, instituted this suit for damages for personal injuries sustained by Miss LeDoux as the result of an automobile accident. The defendants are Southern Farm Bureau Casualty Insurance Company, Ronald Dale Thibodeaux and Mrs. Lela Thi-bodeaux Manuel.[1] Miss LeDoux reached the age of majority while the suit was pending and she was substituted as a party plaintiff. Judgment was rendered by the trial court in favor of Frances LeDoux and against the above defendants. Defendants Thibodeaux and Manuel have appealed.
This case was before us on a prior occasion, at which time we remanded it to enable the trial judge to render and sign a proper judgment. See LeDoux v. Southern Farm Bureau Casualty Insurance Company, et al., 337 So.2d 906 (La.App. 3 Cir. 1976).
The issues presented are (1) whether the defendant driver, Thibodeaux, was negligent, (2) whether Miss LeDoux also was negligent, barring her from recovery, (3) whether Mrs. Manuel is liable for a tort committed by her son, Thibodeaux, and (4) whether the amount of the award is excessive.
Frances LeDoux was seriously injured as the result of a one car motor vehicle accident which occurred on Louisiana Highway 3123, in Acadia Parish, shortly before midnight on November 18, 1971. Miss LeDoux was fifteen years of age at that time. She was riding as a guest passenger in an automobile owned by Mrs. Manuel, and being driven by the latter’s 17-year-old son, Ronald Dale Thibodeaux.
At the time of the accident Thibodeaux was driving west on Highway 3123. When the car traveled over a railroad track which crossed the highway, the vibration caused him to drop his lighted cigarette on the floor of the vehicle. He reached down to retrieve the cigarette, and while doing so he failed to negotiate a gradual right turn curve in the highway. His automobile crossed the opposite or eastbound lane of traffic, ran off the south side of the highway, rolled over and came to rest in an overturned position against a fence.
Miss LeDoux sustained serious injuries as a result of that accident, including a tran-section or total severance of the spinal cord, a collapsed lung, and a cerebral concussion. As a residual of those injuries, she is now a “high paraplegic,” being permanently paralyzed from the waist down. She has undergone spinal fusion surgery in order to enable her to sit up in a wheel chair.
Defendant Thibodeaux testified that he reached for the cigarette on the floor of his car with his left hand, but that while doing so he kept his right hand on the steering wheel, and that he continued to maintain his view of the highway ahead, except that he took his eyes off the road “just for a second.” He stated that after he entered and negotiated a part of the curve, Miss LeDoux grabbed his right hand, pulled it to the right and down, and caused him to lose control of his car as he attempted to turn *968 the steering wheel back to the left. His recollection is that his left rear tire skidded to his left across the center line, that the car then skidded for several feet with its rear wheels in the eastbound lane and the front wheels in the westbound lane, and that the car continued to skid until it ran off the left side of the highway.
Miss LeDoux was thrown from the car after it left the highway and she lost consciousness. She does not remember any of the details of the accident, and she thus has no recollection of the car running off the highway, of grabbing Thibodeaux’s hand or of having pulled the steering wheel to the right.
Thibodeaux testified that he was driving 50 or 55 miles per hour at the time he lost control of his car. The posted speed limit at that point was 60 miles per hour. The evidence shows that the car skidded a distance of 198 feet, partly on the highway and partly on the shoulder and in the ditch, before it came to rest upside down against a fence. Two experts in reconstructing accidents differed somewhat in their opinions as to the speed at which the vehicle was traveling at the time of the accident, and their testimony thus is inconclusive as to the speed at which Thibodeaux was driving when he lost control of his car. The trial judge concluded with reference to the speed of the car that “even if it had been in excess of the posted speed, it was not traveling far in excess of the speed limit of 60 miles per hour.” We agree with the trial judge that the automobile was traveling approximately 60 miles per hour at the time the accident occurred.
The highway at that point is a smooth, level, two-lane, black-topped thoroughfare, with wide shoulders. The hard surfaced part of the highway was well marked with two yellow no passing lines in the center, and with white lines marking the outside edges of the highway. The curve was a long, gradual curve to the driver’s right. The weather was clear and visibility was good. There were no other vehicles in that vicinity, and there were no obstructions on the road. The evidence indicates that a reasonably prudent driver could negotiate the gradual curve where this accident occurred at a speed of 60 miles per hour.
Thibodeaux’s mother and his step-father testified that on the night of the accident, or the next day, Thibodeaux told them that Miss LeDoux had grabbed his right hand and caused him to lose control of the car. The evidence shows, however, that Thibo-deaux did not disclose that information to anyone else, either on the night of the accident or at any other time, until after this suit was filed. The trial judge apparently considered that circumstance to be of some significance. We also believe that Thibo-deaux would have mentioned that important fact to the investigating officer shortly after the accident occurred if plaintiff actually had interfered with his operation of the car and thus had caused him to run off the highway.
The evidence, including photographs of the skid marks on the highway taken immediately after the accident occurred, does not show that the car swerved suddenly to the right or to the left before it left the highway. The tire marks indicate, on the contrary, that the car traveled almost in a straight line from Thibodeaux’s proper lane of traffic, across the eastbound lane, a distance of 48 feet to the south shoulder of the road, and that it did not skid sideways at anytime before reaching the shoulder.
Thibodeaux’s testimony was inconsistent or was challenged in some respects as to the manner in which the accident occurred. In a pre-trial deposition, for instance, he stated that Miss LeDoux did not grab his hand and cause the steering wheel to be turned to his right until the car had crossed the center line and was about 15 feet from the point where it ran off the south edge of the road. In another pre-trial deposition taken about two years later, and also at the trial, he stated that she grabbed his hand while the car was still in his right hand lane of traffic, at least 30 to 48 feet before it ran off the road. Thibodeaux testified in a pre-trial deposition that within a few days after the accident occurred Miss LeDoux told him that “she didn’t remember nothing *969 that happened.” That conflicts with Thibo-deaux’s statement at the trial that plaintiff never gave him that information. Miss Le-Doux and Mrs. Susan Hoffman Huval testified that Thibodeaux told them that he didn’t know how the accident happened. That statement is inconsistent with his later testimony that it was caused by the act of plaintiff in grabbing his right hand.
The trial judge concluded that defendants had failed to show “that Frances LeDoux was guilty of contributory negligence proximately causing the accident.” He based that conclusion partly on a finding that “the vehicle continued straight and ran off the road,” and partly on “inconsistency in the testimony of Ronald Thibo-deaux.” We interpret the finding of the trial court to be that Miss LeDoux did not interfere with Thibodeaux’s steering of the automobile, as contended by defendants, and that she thus was not negligent. We agree with that conclusion. The trial judge held that defendant Thibodeaux was negligent in failing to keep a proper lookout and in failing to maintain proper control of his vehicle, and that his negligence in those respects caused the accident. We also agree with that finding.
Our conclusion is that the sole proximate cause of the accident was the negligence of defendant Thibodeaux in failing to keep a proper lookout and in failing to maintain proper control of the car as he began to negotiate a curve in the highway. We also conclude that plaintiff was free from contributory negligence, and that she is entitled to recover from Thibodeaux the damages she sustained as a result of the above accident.
Mrs. Manuel contends that her son, Ronald Dale Thibodeaux, who was a minor when the accident occurred, was not living with her at that time, and that she thus is not liable for the damages which resulted from his negligence.
Defendant Thibodeaux’s father died when he was an infant, and defendant resided with his mother continuously thereafter until shortly before the accident occurred. His mother qualified as his natural tutrix, and she was serving as such at the time of the accident. She re-married on May 28, 1971, and Thibodeaux continued to live with his mother, and with his step-father for at least three or four months after that marriage.
Thibodeaux quit school and began working on an offshore oil rig in September, 1971, about two months before the accident occurred. He lived in Morgan City while on that job, but he returned home when he was off work. Shortly thereafter he apparently quit his offshore job and began working on a farm. He lived on the farm while in that employment. During all of that time, he left at least some of his clothes and belongings in his mother’s home. He occasionally brought clothes home for his mother to launder, he frequently ate meals in his mother’s home when not on the job, and he used his mother’s car to get to and from work. He has always listed his mother’s home as his permanent address, even up to the time of the trial. At the time the accident occurred he was 17 years of age, he was unemancipated and he was not married.
La.C.C. art. 2318 provides:
“The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemanci-pated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. The same responsibility attaches to the tutors of minors.”
The trial judge held that Thibo-deaux’s “principal place of abode was the home of his mother and step-father,” and that Mrs. Manuel thus is responsible for the damage occasioned by her son’s negligence. We agree. See Guidry v. State Farm Mutual Automobile Insurance Company, 201 So.2d 534 (La.App. 3 Cir. 1967); Watkins v. Cupit, 130 So.2d 720 (La.App. 3 Cir. 1961). We find no error in that part of the judgment appealed from, therefore, which decrees that Mrs. Manuel is liable in solido with Thibodeaux for the damages sustained by plaintiff. Southern Farm Bureau, as the *970 insurer of Mrs. Manuel, is also solidarily liable with the other defendants up to the limits of its policy.
The trial judge rendered judgment in favor of plaintiff, against Thibodeaux, Mrs. Manuel and Southern Farm Bureau, in soli-do, for $50,000.00. He also rendered judgment in favor of plaintiff, but solely against Thibodeaux and Mrs. Manuel, in solido, for the additional sum of $295,943.26. Southern Farm Bureau has paid the full amount it was condemned to pay. Defendants Thibodeaux and Manuel contend that the award made solely against them should be reduced.
The only argument made by the defendants-appellants relating to quantum is that they are not financially able to pay the amount of the award which was made solely against them, and that they thus are entitled to have the award reduced. We agree with defendants that their ability to pay damages should be considered in determining the amount of the award. See Rollins v. New York Fire and Marine Underwriters, 225 So.2d 663 (La.App. 3 Cir. 1969).
Considering the serious nature of the injuries sustained by Miss LeDoux, her life expectancy, and the fact that she will need constant care and a great deal of medical treatment during the remainder of her life, we conclude that the amount of the award made to her is fair and is within the range of the discretion which is vested in the trial court. The remaining question presented is whether that award should be reduced on the ground that defendants are financially unable to pay it.
The evidence shows that Thibodeaux and his mother own a substantial amount of real property in St. Landry and Acadia Parishes, and they own some oil royalties or mineral rights which provide them with an income of about $200.00 per month. The evidence is indefinite as to the value of the assets owned by the defendants, and we are unable to determine from the evidence whether they are financially able to pay the amount of the judgment which has been rendered against them. We thus will not reduce the amount of the award which was made by the trial court.
For the reasons assigned, the judgment appealed from is affirmed. The costs of the appeal are assessed to defendants-appellants.
AFFIRMED.
WATSON, J., concurs in the result.

. State Farm Mutual Automobile Insurance Company also was named as a defendant, but the trial judge dismissed the suit as to that defendant and no one contends on this appeal that that part of the trial court judgment should be modified.