WATKINS, Judge.
A defendant employer appeals from a trial court judgment that held it vicariously liable for damages caused by its employee in a two-vehicle collision. Our review of the record reveals that the trial court erred in concluding this case was an exception to the general rule that an employer is not vicariously liable for the torts of its employee while the employee is traveling to work. The trial court's finding that the employer’s accounting procedure was the equivalent of payment for travel time was manifestly erroneous. Accordingly, we reverse.
FACTS
During the early morning hours of December 24, 1987, Peter Orgeron was killed in an automobile accident on La. Hwy. 1 near Larose, Louisiana. He had been driving his pickup truck in the northbound lane prior to the truck’s collision with a southbound vehicle driven by Joseph McDonald.
Although Mr. McDonald suffered only minor injuries, Mr. Orgeron incurred massive chest and head injuries, causing his death at the scene of the accident. Mr. Orgeron’s body was sent to the Lafourche Parish coroner, who performed an autopsy 24 hours after the accident. The blood sample drawn at the time of the autopsy had a blood-alcohol content of .205.
Mr. McDonald was employed by Energy Catering Service (ECS), a company in the business of supplying equipment and workers for catering services to oil exploration companies at their offshore facilities. ECS would contract with its customers and dispatch workers to perform services at times and places designated by the customers. At the time of the accident Mr. McDonald had performed services for seven different *1042 customers of ECS and had been required to report to approximately seven different transportation or pick-up sites.
Mr. McDonald worked for ECS as a night cook for $3.35 per hour; he did not receive a travel allowance or expenses. ECS had a policy manual with an affirmative requirement that its employees have “reliable transportation.” The employees were warned that failure to acquire such transportation within 90 days of hiring could result in termination of employment. However, ownership of a vehicle by the employee was not required; transportation could be provided by a non-employee.
Mr. McDonald’s regular 14-day “hitch” aboard an offshore platform ended on the morning of December 23, 1987. After being transported from offshore to the transportation site, Mr. McDonald drove his own truck to ECS’s office in Houma, Louisiana, to pick up his pay check. At that time he intended to drive to Mobile, Alabama, to spend Christmas with his family.
When Mr. McDonald arrived at the Hou-ma office, he was advised that ECS was shorthanded and that he was needed to return offshore the following morning. Instead of driving back to Alabama, he stayed in Houma at a motel. Mr. McDonald was ordered by ECS to report to the Fourchon dock by 4:00 a.m., December 24, 1987, for transportation to the L/B Eric Danos, a vessel owned by ECS’s customer, Chevron.
ECS had a unique accounting system, designed for control in light of the fact that the offshore workers did not punch a time clock. As a night cook, Mr. McDonald’s shift was from 6:00 p.m. until 6:00 a.m. If he had reached his work site, he would have worked as a cook only six hours, from 6:00 p.m. until midnight on the first day of the 14-day hitch, December 24. On the last day of the 14-day hitch, January 6, he would have worked 12 hours, from 12:01 a.m. until 6:00 a.m. and from 6:00 p.m. until midnight. He would also have worked from 12:01 a.m. until 6:00 a.m. on January 7, because his relief worker would not have arrived until after his shift had ended. Thus, on the first day of the hitch, if a worker reached the customer’s site, the worker was credited with 12 hours of work, despite the fact that he worked only six hours that day. On the final day that he was offshore, the worker was not paid for any hours. The lack of pay on the last day offset the “overpayment” on the first day.
The plaintiffs in this lawsuit are Ragan Orgeron, the surviving wife, and Jordan Robert Orgeron, the surviving minor child. Although they sued Mr. McDonald individually, he declared bankruptcy, and the matter went to trial with ECS and its insurer, Boston Old Colony Insurance Company, as the sole defendants; neither driver was insured.
After a non-jury trial, the court rendered judgment for plaintiffs. The trial court found as a fact that Mr. McDonald was being paid for his travel time. The trial court concluded that Mr. McDonald was within the course and scope of his employment with ECS at the time of the accident. In reaching this conclusion the trial judge noted that a determination of course and scope is a policy decision, and the judge relied heavily on Jackson v. Long, 289 So.2d 205 (La.App. 4th Cir.1974), a case which, in the judge’s opinion, had “almost identical” facts.
On appeal ECS assigns several errors in. addition to the errors related to the course and scope determination. In light of our conclusion that the trial court fell into manifest error when it held ECS to be vicariously liable for Mr. McDonald’s tort, it is unnecessary for us to reach the other, unrelated errors alleged by appellant.
LEGAL PRINCIPLES
Louisiana Civil Code article 2320 provides:
“Masters and employers are answerable for the damage occasioned by their servants ... in the exercise of the functions in which they are employed.
[[Image here]]
In the above cases, responsibility only attaches, when the master or employers, ... might have prevented the act which *1043 caused the damage, and have not done it.”
The civilian master-servant doctrine expressed in the code and the common law counterpart, vicarious liability or responde-at superior, are both based on Roman law. Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990). The doctrines are sufficiently similar that Louisiana courts have drawn freely from the common law in applying the legal principles of master-servant to concrete problems. See authorities cited in Ermert. Thus, Article 2320, which provides that employers are liable for the acts of their employees that the employers “might have prevented” but have not prevented, has been construed in such a way that it is consistent with the common law rule.
Louisiana jurisprudence has not interpreted this restriction [of Article 2320] literally, and the demands of modern commerce and the needs of society would not permit such a stringent and severe limitation of the liability of a master for his servant. However, by inquiring into the overall relationship of the parties and the element of control, our jurisprudence has established reasonable definitions and limitations of vicarious liability to replace the literal codal restriction which has fallen into desuetude. (Citations omitted.) It is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant.
[[Image here]]
A servant is one who offers his personal services for a price. He is an integral part of his employer’s business and must submit to the control of his physical conduct as well as of his time. (Emphasis in original.)
Blanchard v. Ogima, 253 La. 34, 215 So.2d 902, at 905, 906 (1968).
The element of control is a requirement in transportation cases, that is, cases in which third parties are injured while employees are travelling to or from work. Rollins v. New York Fire & Marine Underwriters, Inc., 225 So.2d 663 (La.App. 3d Cir.), writ refused, 254 La. 855, 227 So.2d 595 (1969), was a case in which the court struggled with evaluating the employer’s right of control in light of the fact that the employee was being paid for travel time. In a concurring opinion, 225 So.2d at 673, 674, Judge Tate explained,
“The basic conceptual reason for the master’s liability for the torts of his servant is the master’s theoretical right of control. Civil Code Article 2320; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902, 905.
In modern times this conceptual requirement has been relaxed, in view of the demands of modern commerce and the needs of society that an enterprise pay the costs of the damages sustained through its operations. Blanchard v. Ogima, cited above. Nevertheless, this conceptual background is an explanation why, for instance, the master may not be held liable for a tort caused when the servant grossly deviates from the scope of his employment, even though the latter is drawing pay at the time.
Similarly, in the present instance, Doss (the employee) may have been entitled to pay, but this was in the nature of a fringe benefit, like vacation pay, which did not have to do with the performance of services or with an employment duty to report somewhere. (Emphasis in original.)
[[Image here]]
The several factors mentioned by the majority ... seem to me to be appropriate reasons not here to apply mechanically the ... rule that an employee being compensated for his travel time is therefore in the course of his employ-ment_” (Emphasis added.)
The general rule has been stated in numerous cases. “Usually, an employee going to and from work is not within the course and scope of employment, particularly if the employee is not being paid mileage or any kind of per diem and is not performing an activity necessitated by or arising out of the nature of the employment.” Smith v. Lewis, 499 So.2d 1350, 1352 (La.App. 5th Cir.1986), writ denied, 503 So.2d 476 (La.1987). The plaintiff has *1044 the burden of proving special circumstances that take a particular employee’s travel to or from work out of the purview of the general rule of no vicarious liability and cause the travel to be so closely related to the employment that the employer is deemed to have control of the travel. See Averette v. Travelers Ins. Co., 174 So.2d 881 (La.App. 1st Cir.1965); Beard v. Seamon, 175 So.2d 671 (La.App. 1st Cir.1965).
In Smith v. Lewis, supra, our brethren of the fifth circuit considered an employer whose business was very similar to that of the employer in the instant case. The defendant Lewis was an employee of Production Management Industries, Inc. (PMI), which was engaged in sandblasting, painting, and coating of offshore drilling platforms. Its main office was in Belle Chasse, Louisiana. Crews were often dispatched from the office to Leeville, where they were picked up and taken offshore by helicopters owned by various oil companies. Ordinarily, some PMI crew members would meet at the Belle Chasse office, and 90 percent of the time they were driven to Leeville in a PMI van. But on the day of the accident a company van was not available, and Lewis drove his own vehicle. Plaintiff Smith was a third-party passenger in the Lewis vehicle who sustained injury when Lewis fell asleep at the wheel and ran off the road. The jury found that Lewis was neither a replacement driver nor on a special mission for PMI; that there was no company policy requiring crew members to meet in Belle Chasse; that transportation between Belle Chasse and Leeville was not guaranteed and was not provided as a term of employment. The appellate court affirmed the decision that Lewis was not within the course and scope of his employment at the time of the accident. The appellate court noted that the plaintiff failed to prove, by a preponderance of the testimony and evidence, circumstances that would have made the general rule of no liability inapplicable. See Smith v. Lewis, supra.
We find the reasoning in Smith v. Lewis quite persuasive, much more so than the reasoning in Jackson v. Long, supra. In deed, considering the facts of the instant case, we find the trial judge’s reliance on Jackson to be misplaced. The main distinction between Jackson and the case sub judice is that Jackson was a worker’s compensation claim. Both civilian and common law jurisdictions are quite restrictive in extending responsibility for the acts of others. Blanchard v. Ogima, supra. The rule of an employer’s responsibility has been given a strict application in tort actions, as opposed to a liberal construction in worker’s compensation cases. Romero v. Hogue, 77 So.2d 74 (La.App. 1st Cir.1954).
Even in the context of a worker’s compensation case, Guidry v. Chevron U.S.A., Inc., 461 So.2d 625 (La.App. 1st Cir.1984), this court has not been persuaded by Jackson. In Guidry the employer provided transportation to various work sites but did not provide transportation to and from the central facility from which field mechanics such as the plaintiff were dispatched. In answer to the contention that the necessity of transportation to the central facility supported a holding that the transportation was incidental to plaintiff’s employment, this court held that requiring an employee to show up for work does not make transportation an incident of the employment contract. “Most employees are required to show up for work or risk losing their jobs.” Guidry v. Chevron U.S.A., Inc., supra at 627. Furthermore, although the employee’s activity, such as traveling to his place of work, may incidentally benefit his employer, the activity does not necessitate a finding that he was acting in the course and scope of his employment. See Dragon v. Fisher, 244 So.2d 347 (La.App. 4th Cir.1971), citing Graffagnini v. George Engine Co., Inc., 45 So.2d 412 (La.App.Orl.1950).
Another distinction between Jackson and the instant case is the lack of control the employer had over the employee at the time of the accident. Jackson was injured in a vehicle while he was riding to a job site in Mississippi after being dispatched from his employer’s headquarters in Louisiana; the accident in the instant case occurred before the employee reached the location from which he would be dispatched. Mr. Gary Fister, owner-president of ECS, testi *1045 fied at trial that Mr. McDonald was free to stay anywhere he wished the night before he was to report for work. He stayed in Houma, Louisiana, but he could have chosen to drive to Leeville on the evening of December 23. Had he so chosen, he would have been at the Fourchon on the morning of December 24, and not on La. Hwy. 1 at the time of the accident.
Another indicia of lack of control over the traveling employee in the instant case was the fact that Mr. McDonald provided his own transportation to the dock. He was not reimbursed for his travel expenses. Nor, contrary to the conclusion reached by the trial court, was the employee paid for travel time. At trial, ECS’s witness, Mr. Glenn LeCompte, explained the bookkeeping procedure for accounting for work on the offshore facilities. Although the worker ending his shift had to wait on the offshore facility for his relief, he was not paid for that time. Accordingly, the relief worker, who was traveling to the facility was the worker credited with the time instead of the worker at the end of his hitch. Mr. LeCompte testified that the offset was merely “for bookkeeping purposes.”
Nevertheless, the trial court concluded that ECS’s bookkeeping entries were tantamount to payment of its employees for travel time. The trial judge expressed his opinion that the company “chose to keep its books in this manner, and therefore must live with its decision.” This conclusion on the part of the trial court was manifest error because the company’s bookkeeping decision was not material to the question of whether Mr. McDonald was being paid for his travel time so as to place him within the course and scope of his employment while traveling. The bookkeeping methods used by the defendant company had no relationship whatsoever to Mr. McDonald’s action in allegedly causing damage to the plaintiffs.
Even if ECS’s choice of bookkeeping methods was material to the determination of whether the worker was paid for travel time, there is nothing in the method to suggest that the hours of 12:01 a.m. to 6:00 a.m. on December 24 were the six “extra” hours for which he was paid. It would appear to be more logical to impute payment to six hours during December 24 when Mr. McDonald was at the worksite but not on his shift, between 6:00 a.m. and 6:00 p.m. Because Mr. McDonald received no compensation for his hours driving on the highway, the element of control by the employer necessary to trigger vicarious liability is lacking.
There is testimony in the record that ECS billed its customer for 24 hours of each day of the worker’s shift, which normally would have included the time of the accident. However, this fact is not material to a determination of the worker’s being paid for travel time. Instead, the fact may be relevant for a determination of whether the worker’s travel to the work site was a “benefit” to his employer. If Mr. McDonald’s travel was a benefit to ECS, the benefit was merely incidental and insufficient to support a finding of course and scope of employment. See Dragon v. Fisher, supra.
Because the defendant driver was not in the exercise of the functions in which he was employed (LSA-C.C. art. 2320), at the time of the accident, his employer, ECS, cannot be held liable for his tort. Accordingly, we reverse the judgment of the trial court and assess plaintiffs with all costs of this appeal.
REVERSED.