215 So.2d 902 (1968)
253 La. 34
Edgar Frank BLANCHARD and the Home Indemnity Company
v.
Sam OGIMA, Vincent Russo d/b/a Russo Motors.
No. 48875.
Supreme Court of Louisiana.
November 12, 1968.
Rehearing Denied December 16, 1968.
*903 James J. Morrison, E. Howard McCaleb, III, New Orleans, for plaintiffs.
Francis G. Weller, Deutsch, Kerrigan & Stiles, Charles E. Cabibi, Anthony J. Russo, New Orleans, for defendants-appellees.
BARHAM, Justice.
Edgar Frank Blanchard and Home Indemnity Company, his employer's workman's compensation insurer, instituted this suit for damages resulting from personal injuries suffered by Blanchard. A Volkswagen titled in the name of Russo Muffler Shop, a trade name under which the defendant Vincent Russo operated, was driven by the codefendant Sam Ogima and left parked on an incline unattended. The car became disengaged from the parked position and crushed Blanchard against another automobile. General Guaranty Insurance Company, Russo's insurer, was made a codefendant by amended petition and was made a third party defendant by Russo.
The trial court rendered judgment for the plaintiffs against Ogima, dismissed the suit against Russo and General Guaranty, and also dismissed the third party demand. The Court of Appeal, Fourth Circuit, affirmed the district court's judgment. See 200 So.2d 374. The trial court based its judgment upon a finding that Ogima was an independent contractor, and that Russo and his insurer were therefore not liable. The trial court did not consider the possible liability of General Guaranty under the omnibus clause of its insurance policy. The basis of the Court of Appeal's judgment was its finding that there was a relationship of principal and agent between Russo and Ogima, but that the agent Ogima had deviated from his agency, and that Russo was therefore not liable. The Court of Appeal further found that General Guaranty Insurance Company was not liabile for Ogima's negligence under the omnibus clause of its policy because coverage under the insurance policy did not extend to the particular vehicle involved.
We granted certiorari upon application of the plaintiffs, Blanchard and Home Indemnity. Since lengthy findings of fact by the trial court and lengthy findings of fact by the appellate court have been given in this case, we will briefly set forth only the accepted conclusions of fact necessary for this opinion.
Neither the negligence nor the liability of Ogima is in dispute. The Court of Appeal found that the defendant Ogima was "a kind of free-lance individual known in the trade as a `bird dog' salesman". This term is derived from such a salesman's practice of `flushing' out a prospect for the purchase of a certain type of car. The salesman then makes an arrangement with a car dealer to offer the car to the prospect, and is paid on commission or by retaining all of the purchase price above an agreed figure. Ogima also sold cars owned by Russo from a used-car lot in Gentilly. The Court of Appeal found that there was no joint venture between Russo and Ogima, and also that "Apparently Russo had little or no control over Ogima's sales contacts or methods". It also found that Ogima possessed and used the Volkswagen with Russo's permission and consent for the purpose of selling it. The legal conclusions by the Court of Appeal based upon its factual findings were:
"* * * Ogima was not an employee of Russo over whom he exercised the usual control and supervision. * * *" (Emphasis here and elsewhere has been supplied.)
"* * * that the necessary elements of independent contractor status are not present here nor were the elements of employer-employee. The relationship between Russo and Ogima was that of principal and agent."
*904 We accept these legal conclusions of the appellate court, and particularly the finding that Russo and Ogima were principal and agent when the accident occurred. We cannot accept, however, the Court of Appeal's finding that this relationship alone is sufficient to establish liability on the part of Russo if the negligent acts of Ogima were within the "scope of his authority". The consequences and liability for the negligent and tortious acts of another do not flow simply because of a principal-agent or principal-mandatary relationship. Civil Code Article 2985 et seq., titled "Of Mandate", define the nature of the contractual relationship and the obligation of the parties under a mandate, but do not attempt to fix liability for the tortious acts of a mandatary. Russo's liability, if any, must arise under a master-servant relationship. Article 176 of the Civil Code provides:
"The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses."

It is apparent, then, that the pertinent articles under the title dealing with quasi-contracts and offenses and quasi-offenses, Article 2315 et seq., govern the instant case, and that the articles under the title "Of Mandate" are not applicable.
"Art. 2315. Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * *."
"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
"Art. 2320. Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
"Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
"In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it."
These provisions of our Code have their source in the Code Napoleon (1804), Articles 1382-1384. Article 1384 of that Code provides in part:
"* * * masters and trustees [are responsible], for the injury caused by their servants and managers in the functions in which they have employed them * * *." (Barrister of the Inner Temple tr.)
Planiol says of this article of the Code Napoleon:
"There is nevertheless something exceptional in Art. 1384, and that is the presumption of fault it establishes against the persons it enumerates. As a consequence, this text should receive a strict interpretation, as should all those which control legal presumptions." 2 Pt. 1 Planiol, Treatise on the Civil Law (La. State Law Inst. tr. 1959), sec. 909A, p. 508.[1]
The Anglo-American or common law doctrine comparable to our master-servant doctrine is labeled "respondeat superior".[2] Although there was the foundation within *905 the civilian law for development of our own theory of vicarious liability (La. Civ. Code Arts. 2315-2320), our jurisprudence has drawn freely upon the common law to the extent that it is difficult to differentiate the civilian and common law theories.[3] Both civilian and common law were and are very restrictive in extending responsibility for the acts of others. Our Article 2320 restricts this liability to "masters and employers for * * * their servants and overseers * * *" when they "* * * might have prevented the act which caused the damage, and have not done it". Louisiana jurisprudence has not interpreted this restriction literally, and the demands of modern commerce and the needs of society would not permit such a stringent and severe limitation of the liability of a master for his servant. However, by inquiring into the overall relationship of the parties and the element of control, our jurisprudence has established reasonable definitions and limitations of vicarious liability to replace the literal codal restriction which has fallen into desuetude. James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9 (1933); Jones v. Shehee-Ford Wagon & Harness Co., 183 La. 293, 163 So. 129 (1935); Valley v. Clay, 151 La. 710, 92 So. 308 (1922); Godchaux v. Texas & P. Ry. Co., 144 La. 1041, 81 So. 706 (1919). See also the following Court of Appeal cases: Crysel v. Gifford-Hill & Co., 158 So. 264 (La.App. 2nd Cir. 1935); McAllister v. Jackson Brewing Co., 6 So.2d 179 (La.App. Orleans 1942); Jones v. Shehee-Ford Wagon & Harness Co., 157 So. 309 (La.App. 2nd Cir. 1934). It is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant. However, the Louisiana courts as well as the commentaries have upon occasion overlooked the elements of control and relationship and have used interchangeably and without distinction "principal and agent" ("principal-mandatary") and "master and servant".[4] *906 The decision relied upon by the Fourth Circuit Court of Appeal in the instant case, Morton v. American Employers Insurance Co., 104 So.2d 189 (La.App. 2nd Cir. 1958), is a case in which such language was carelessly employed. In that case the court stated:
"* * * These facts, in our opinion, show quite clearly Whitney merely appointed Busher his agent or attorney for the purpose of selling the vehicle. In delivering the car in question to Busher, it was unnecessary for Whitney to expressly confer power to perform functions by his agent such as are customarily performed in the ordinary course of business without express authority. * * *"
In the Morton case the court then quoted Louisiana Civil Code Article 3000, which concerns the contractual obligation of principals and mandataries, and concluded:
"* * * that Whitney and Busher as to the transaction between themselves, were principal and agent."

That court then erroneously held the principal liable for the physical tort of his agent who was neither servant nor employee, for there were absent both the right to exercise physical control and the economic relationship necessary to establish master-servant status.
A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent.
"A principal is not liable for the harm caused by negligent physical activities of a non-servant agent. * * *" Seavey, Law of Agency, § 91, I, p. 161.
"A principal is not liable for physical harm caused by the negligent conduct of a non-servant agent, during the performance of the principal's business * * *." Restatement of the Law Second, Agency 2d, sec. 250, p. 549.
The comment under this section states the problem succinctly:
"* * * Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relation of principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relation of master and servant that the person in whose service the act is done becomes subject to liability for the physical [tortious] conduct of the actor. * * *"
Although a servant may possess the qualities of an agent, all agents do not qualify as servants. The master-servant relationship cannot be equated with the principal-agent relationship. Employer-employee status may be included within the master-servant relation, but principal-agent status cannot unless the agent is also a servant. Neither jurisprudence nor modern commerce will allow us to define "servant" as one who does only physical acts. "Servant" must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to very close control by, the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer's business and must submit to the control of his physical conduct as well as of his time. *907 A non-servant agent contributes to the business of his employer, but he is not such a part of it that his physical acts and the time to be devoted to the business are subject to control.
The particular consideration for this court in the instant case is properly stated as follows:
"Granting that the particular nature of the employment of selling automobiles may require some consideration in application of the rules to particular fact situations, it can still be safely said that the liability of an automobile dealer for the negligent operation of an automobile by a salesman is to be determined by the general principles governing vicarious liability of an employer for the acts of an employee. Thus, conceding the driver's negligence, the ordinary line of inquiry is: (1) Was the driver acting in any employment relationship for the defendant? (2) If so, was the relationship that of master and servant or contractee and independent contractor? * * *" 53 A.L.R.2d § 2, p. 634.
The Court of Appeal found as a fact that Russo had little or no control over Ogima's sales contacts or methods, that Ogima was not an employee of Russo subject to the usual control and supervision, and that Ogima was in fact a freelance salesman of a type that would be compensated, if the car were sold, by a commission or by being allowed to keep all of the price above an agreed figure. We find that Russo did not have the right to control the physical movements of Ogima, or to require a specific allotment of time by Ogima for his benefit. This was a "one-shot" operation. There was no fixed salary or payment for services to be rendered; compensation was to depend upon results obtained and not services rendered for this one act. The only control which Russo exercised over Ogima was that he should obtain at least a fixed minimum sum for the car he sold. Russo could not determine to whom the sale was to be made, the time to be spent in effectuating the sale, or the place of sale, nor could he control any of the details of Ogima's physical conduct in effecting the sale. Ogima was an independent freelance agent or salesman for one sale. It must be concluded that Ogima was not the servant of Russo, and that Russo was therefore not liable for the physical negligence of Ogima.
There was a policy of insurance in the name of Vincent J. Russo d/b/a Russo's Muffler Shop at 1111 North Broad Street, New Orleans, Louisiana. It is contended that Ogima's liability extended to the insurer, General Guaranty Insurance Company, because of coverage under the policy's omnibus clause afforded those who operate the insured vehicles with permission. The policy issued to Russo contained the standard clause:
"Persons Insured * * * (3) With respect to the Automobile Hazard: (a) any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph 1(a) or 2 of the Automobile Hazards, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *."
It cannot be seriously disputed that Ogima was such a person who might claim protection under this provision if the automobile he was operating or using at the time of the accident was covered by the policy. The policy is a standard garage liability policy, and the relevant provisions for a determination of coverage of the particular automobile here involved are:
"Part ILiability
"* * *
"1. All Automobiles
"(a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any *908 automobile owned by or in charge of the named insured and used principally in garage operations, and
"* * *
"Definitions. As used in Part I:
"* * *
"`garage' means an automobile sales agency, repair shop, service station, storage garage or public parking place;
"* * *."
Under these provisions of the policy, if the automobile was kept at the premises of Russo at 1111 North Broad Street and was either a car used in garage operations or a utility car, the car would come within the coverage of the policy. Both the trial court and the appellate court, however, found that the automobile was in fact located at 442 North Broad Street on a used-car lot owned by Russo and operated under the trade name Russo Motors. We accept and agree with this finding of fact by the courts below, and also agree with the conclusion reached by the Court of Appeal as to coverage:
"* * * General Guaranty did not insure all the used automobiles Russo might have from time to time for sale, wherever located. Its coverage was limited to the muffler shop operations and the utility cars used in connection therewith at 1111 North Broad Street. We therefore, hold that the Volkswagen was not covered."
Hence General Guaranty Insurance Company is not liable under the omnibus clause of this policy for the negligent acts of Ogima, since the automobile he was using with the permission of Russo was not within the coverage of the policy.
The judgments of the district court and the Court of Appeal are affirmed. Costs in this court are to be paid by the plaintiffs-relators.
McCALEB, J., recused.

On Application for Rehearing.
PER CURIAM.
Applicant correctly urges that we were in error in stating: "That court [in Morton v. American Employers Insurance Co., 104 So.2d 189 (La.App. 2nd Cir. 1958)] then erroneously held the principal liable for the physical tort of his agent * * *."
The Morton case was used for a comparison of language and not for its holding. While finding a non-servant agent free from negligence and his principal therefore absolved from liability, the court used language indicating that it would have fixed personal liability upon the principal had the non-servant agent been negligent.
Rehearing refused.
McCALEB, J., recused.
NOTES
[1] See Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934); 2 Pt. 1 Planiol, Treatise on the Civil Law (La.State Law Inst. tr. 1959), sec. 911, p. 510, citing Pothier, Obligations, No. 121, and saying that "* * * bad choice or lack of surveillance was, for Pothier, the basis for the responsibility of the master."
[2] "Let the master answer": Black's Law Dictionary (DeLuxe ed. 1944). "Si respoigne son sovereign": St. 28 Ed. I, c. 18. "Sovereign" is considered synonymous with "master" by Dyer, Alford v. Eglisfield, 230b, pl. 56.

Laski, The Basis of Vicarious Liberty, 26 Yale L.J. 105 (1916).
O. W. Holmes, Agency, 4 Harv.L.Rev. 345, traces the common law source through the "frithborh" or frankpledge of Saxon origin to the doctrine of patria potestas of Roman law, saying: "Thus, in torts it is sometimes said that the liability of the master is `in effect for employing a careless servant,' repeating the reason offered by the pseudo-philosophy of the Roman jurists for an exceptional rule introduced by the praetor on the ground of public policy. * * *"
Priestly v. Fowler, 3 M & W 1 (Ex 1837), where a servant who was injured by negligence of a fellow-servant was denied recovery from the master, is often cited as a reversal or limitation upon the English doctrine respondeat superior. Almost contemporaneously, our 1808 Civil Code restricted the masters' liability for their servants' acts. Cf. C.N. Art. 1384 (1804); La.Civ.Code 1808, Art. 20, pp. 320, 322; La.Civ.Code 1825, Art. 2320. Roscoe Pound, The Economic Interpretation and the Law of Torts, 53 Harv.L. Rev. 365. Holmes and Pound state that vicarious liability is an exception to the general principle. Compare this Anglo-American theory of the development of vicarious liability with the philosophy of Planiol and Pothier to the same intent. Note also that Holmes and Pound contend that the employer-employee relation was conceived as a domestic relation and is the basis for the tort liability of the employer for the employee. In short, they state the theory evolved from the liability of the head of the household for dependent members.
[3] See Pound, Holmes, Pothier, Planiol for similarity as to theory, conception, and history. It appears that both civilian and common law doctrines are based upon Roman law. There is a parallel development and history of vicarious liability in both jurisdictions with almost simultaneous extensions or limitations of responsibility by statute or jurisprudence. See Footnote 2, supra. So actually the common law does not present a departure from our civilian law in this field.
[4] For a comparison of cases loosely using agency terms to define the master-servant relationship necessary to impose liability under Louisiana Civil Code Article 2320, see Hart v. Hardgrave, 103 So.2d 910 (La.App. 2nd Cir. 1958); Martin v. Brown, 117 So.2d 665 (La.App. 2nd Cir. 1960); Atkins v. Points, 148 La. 958, 88 So. 231 (1921); Adams v. Golson, 171 So. 403 (La.App. 1st Cir. 1936); Tuck v. Harmon, 151 So. 803 (La.App. 2nd Cir. 1934); Black v. Rock Island, A. & L. R. Co., 125 La. 101, 51 So. 82, 26 L.R.A.,N.S., 166 (1910); Wise v. Smith, 186 So. 857 (La.App. 2nd Cir. 1939); Smith v. Howard Crumley & Co., 171 So. 188 (La.App. 2nd Cir. 1936).