LOTTINGER, Judge.
This is a suit filed by Sherman Jones and his wife, Elnora Jones, to recover damages and funeral expenses resulting from the wrongful death of their minor son, Donnie Ray Jones. The defendant is Maryland Casualty Company who had issued a homeowners insurance policy to J. Taylor Rooks, the owner of the premises upon which the death of young Jones took place. The Lower Court awarded judgment in favor of defendant and dismissed petitioner’s suit, and the petitioners have taken this appeal.
The findings of fact as determined by the Lower Court are as follows:
“On the day in question, Donnie Ray (age 14) and his brother, Roy (age 12) were taken to the Rooks’ residence by Mrs. Lenora S. Rooks to do yard work. Mr. Rooks had delegated to his mother responsibility for the management of his rental property. Additionally she handled the upkeep of his yard on Bright- *360 side Lane. She had permission to use his swimming pool on Brightside Lane.
After the two boys had completed the yard work assigned to them they asked Mrs. Rooks if they could go for a swim. While the testimony is not altogether clear, the Court has concluded that Donnie Ray told Mrs. Rooks that he could swim while Roy told her that he could not swim. Mrs. Rooks loaned the boys some swimming trunks and permitted them to dress in a cabana adjacent to the Swimming pool. After the boys had been playing at the shallow end of the pool for about 15 minutes, Mrs. Rooks left the pool and went into the house to get her car keys to take the boys home. When she returned Roy was sitting on the side of the pool but Donnie Ray was not visible. Mrs. Rooks proceeded to the poolside where she spotted Donnie Ray submerged at the bottom in the approximate center of the pool. Mrs. Rooks realized that something was seriously wrong and ran into the cabana where she called the fire department and her son’s office. It is not completely clear exactly what rescue efforts, if any, were made by Mrs. Rooks. Mrs. Rooks said she could swim but she was not trained in life-saving or water safety techniques, and there were no safety floats or ropes near the pool. Mrs. Rooks attempted without success to hook an electric extension cord from a fan over the submerged boy. The Court cannot qualify this as a reasonable rescue effort.
Pursuant to his mother’s phone call, J. Taylor Rooks came from his office to his residence. When he arrived he attempted to retreive the boy by throwing lawn furniture to him. Mr. Rooks was also unsuccessful in his efforts to pull the boy out. Eventually, the fire department arrived, removed the boy, and vainly attempted to rescitate him.
It is the plaintiffs’ position that their son’s death was by drowning which was proximately caused by the negligence of Mrs. Lenora S. Rooks and/or J. Taylor Rooks. Plaintiffs further submit that the insurance policy issued to J. Taylor Rooks by defendant, Maryland Casualty Company, affords coverage to Mr. Rooks under the facts of this case. Thus, the court herein faces two issues, (a) negligence vel non, and (b) insurance coverage vel non.”
Based upon the above findings, the Lower Court held the negligence of Mrs. Rooks as the proximate cause of the drowning of young Jones. The Lower Court further found no negligence on the part of Mr. Rooks and that the relationship between Mr. Rooks and his mother was not that of master and servant but that Mrs. Rooks was the non-servant agent of her son and', therefore, that no liability would attach to Mr. Rooks for the negligence of his mother. The Trial Court further found that the omnibus clause of the policy of insurance would not classify Mrs. Rooks as an insured under the policy.
The petitioner claims that Mr. Rooks was negligent (1) in failing to have any type of physical barrier or rope installed to separate the deep end from the shallow end of the pool, although the necessary connections for such a restraint were available, (2) in failing to equip the pool with lifesaving devices, such as ropes, hooks or life preservers and (3) giving his mother, Mrs. Lenora S. Rooks, who could not swim, authority or permission to permit non-swimmers to use his pool.
We feel the Lower Court was correct in finding no negligence on the part of Mr. Rooks in failing to provide barriers or life-saving devices. Young Donnie Ray Jones was 14 years of age at the time of his unfortunate death. Although the failure of Mr. Rooks in this regard might be considered negligence on his part were we faced with a situation in which the “attractive nuisance” doctrine were before us, the age of Donnie would certainly preclude the application of such doctrine in the present case and, furthermore, the petitioners have not even suggested that such doctrine would prevail.
*361 In support of its contention that Mr.. Rooks was negligent, the petitioners have cited Benoit v. Hartford Accident and Indemnity Co., La.App., 169 So.2d 925; Walker v. Rose Hill Amusement Co., La. App., 167 So. 144, and Rome v. London & Lancashire Indemnity Co. of America, La. App., 169 So. 132. All three of these cases dealt with injuries to patrons of public swimming pools. And in each of these cases, the Courts held in favor of the defendants. Certainly the duty of care to the proprietor of a public pool would be greater than that of the owner of a private backyard pool.
The evidence here reflects that although Mrs. Rooks had permission of her son to use the swimming pool, Mr. Rooks neither granted permission nor did he know that she had allowed anyone who worked for her to use his pool. The children, in swimming on this unfortunate date may have been considered guests of Mrs. Rooks, however, they certainly could not be considered as guests of Mr. Rooks.
The omnibus clause of the homeowners policy of insurance on Mr. Rooks’ residence provides as follows:
“(a) ‘Insured’ means
(1) The Named Insured stated in the Declarations of this policy;
(2) if residents of the Named Insured’s household, his spouse, the relatives of either, and any other person under the age of 21 in the care of any Insured; and
(3) under Coverage E—Personal Liability and Coverage F—Medical Payments to others: * * *”
The Lower Court concluded that Mrs. Rooks was not an insured under the policy issued to her son. Certainly she was not a named insured, nor did she live in his household which would disqualify her under subparagraphs 1 and 2. Subpar-agraph 3 of the insuring agreement is inapplicable by its own terms, as it refers to animals, water craft and vehicles. Thus, there is no liability imposed on the insurance company because of any negligence which might be found on the part of Mrs. Rooks. Nor would defendant be liable for funeral expenses under the provisions of the policy of insurance because this coverage obligates defendant;
“To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury caused by accident,
(a) while on the premises with the permission of an Insured, or
(b) while elsewhere if such bodily injury,
(1) arises out of the premises or a condition in the ways immediately adjoining,
(2) is caused by the activities of an Insured, (3) is caused by the activities of or is sustained by a residence employee and arises out of and in the course of his employment by an Insured, or (4) is caused by an animal owned by or in the care of an Insured.”
Nor do we believe that any negligence would be imputed to Mr. Rooks because of the contractual relationship which existed between himself and his mother. It is contended by the petitioners that the negligence of Mrs. Rooks is imputable to her son under the master-servant relationship which they claim existed between them.
The evidence reflects that Mrs. Rooks was not subject to the traditional control and supervision which is held by a master over his servant. Mrs. Rooks was not required to devote specific amounts of time to activities connected with the upkeep of her son’s residence. She managed his rental property. As part of her duties, she *362 maintained the grounds of the said rental properties as well as those of his home. She did not work any specified number of hours per day nor did her son exercise any control over her in these activities.
The Lower Court, therefore, concluded that Mrs. Rooks was the non-servant agent of her son and based its decision on Blanchard v. Ogima, 253 La. 34, 215 So.2d 902. In that case, the Lower Court said:
“A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent.
‘A principal is not liable for the harm caused by negligent physical activities of a non-servant agent. * * * ’ Seavey, Law of Agency, § 91, I, p. 161.
‘A principal is not liable for physical harm caused by the negligent conduct of a non-servant agent, during the performance of the principal’s business * * Restatement of the Law Second, Agency 2d, sec. 250, p. 549.
The comment under this section states the problem succinctly:
'* * * Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relation of principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relation of master and servant that the person in whose service the act is done becomes subject to liability for the physical (tortious) conduct of the actor. * * *’
Although a servant may possess the qualities of an agent, all agents do not qualify as servants. The master-servant relationship cannot be equated with the principal-agent relationship. Employer-employee status may be included within the master-servant relation, but principal-agent status cannot unless the agent is also a servant. Neither jurisprudence nor modern commerce will allow us to define ‘servant’ as one who does only physical acts. ‘Servant’ must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to very close control by, the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer’s business and must submit to the control of his physical conduct as well as of. his time. A non-servant agent contributes to the business of his employer, but he is not such a part of it that his physical acts and the time to be devoted to the business are subject to control.”
As the only defendant herein is the insurer of Mr. Rooks, and we have found no negligence on the part of Mr. Rooks nor that Mr. Rooks was liable for any negligence which might be imputed to his mother in this particular case, we feel that the decision of the Lower Court was correct.
For the reasons hereinabove assigned, the decision of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioners.
Judgment affirmed.