Mrs. Barbara Janusa SMITH, Individually and as natural tutrix of the minor children, Lee Roy Smith, III and Raymond Smith,

v.

**ASSOCIATED PIPE LINE CONTRACTORS, INC.**

and

**Travelers Insurance Company**
**Liberty Mutual Insurance Company, Intervenor,**

**Civ. A. No. 15690.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Nov. 14, 1972.

494

Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., Baggett, Hawsey & McClain, Lake Charles, La., for plaintiff.

Holt & Woodley, Lake Charles, La., for defendants.

Hall, Raggio & Farrar, Lake Charles, La., Bruce J. Borrello, New Orleans, La., for intervenor.

HUNTER, Judge:

This is a suit in tort arising out of an automobile accident which occurred on November 21, 1969. The suit is brought by the surviving widow of Lee Roy Smith, Jr., on behalf of herself and her children. Lee was killed in an automobile accident on November 21, 1969, when his vehicle was struck by a car being driven by Billy D. Nugent.

It is undisputed that Smith's death resulted from the negligence of Nugent. The sole issue is whether Nugent was in the course and scope of his employment with Associated Pipe Line Contractors at the time of the accident, so as to impose vicarious liability upon Associated. This is the same accident which was involved in Moore v. Associated Pipe Line Contractors, No. 15246, affirmed by the Fifth Circuit, 1972, 468 F.2d 815. That case involved a Jones Act case but the issue of employment relationship was decisive. The Court of Appeals, in its Per Curiam, stated:

"It is undisputed that Moore's death resulted from the negligence of Nugent. For liability to attach under the Jones Act, however, it is necessary that the negligence be imputed to the employer. Hopson v. Texaco, 1966, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740. Under the labor contract, no employee, with the possible exception of the union steward, had any right to shore leave until the job was completed. When Nugent left the barge, he left the scope of his employment relationship and the employer barge company was no longer responsible for his actions."

In Louisiana the doctrine of respondeat superior is set forth in LSA–C.C. Arts. 176, 2317 and 2320, the latter of which states that "employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." The basic conceptual reason for the master's liability for the torts of his servant is the master's theoretical right of control. Blanchard v. Ogima, 253 La. 34, 215 So.2d 902, 905. The use of the vehicle at the time must have been in the service of the employer or while about the employer's business.

The record here reveals that several days before the accident Nugent left the pipeline barge on which he had been employed and came ashore. The purpose of Nugent's coming ashore was to attend a union meeting in Baton Rouge, Louisiana. He left on November 18th. On

November 21st, the fatal accident occurred as he was returning to the vessel.

It will not be disputed that under the terms of employment, the entire crew, of which Nugent was a member, was under orders to remain on the barge until after the job was completed. There was no authorized or scheduled off time, as it was not anticipated that the job would last more than two or three weeks longer.

When Nugent left the barge it was without the desire or approval of his employer.

The barge superintendent was not aware of it until the following day. Under the terms of the Union contract the employer was not obliged to furnish transportation to Nugent, nor was he entitled to wages while off the barge. His rights are clearly spelled out in the labor contract. The employer had no control whatever over Nugent during his authorized off time and inferentially one might conclude even less during unauthorized leave.

Nugent did not occupy any official position with Associated. His deposition, which is in the record, contains the following exchange:

Q. What did you understand to be the conditions of your employment as far as time off was concerned?

A. That we work a couple of weeks. We want two, three days off, we'd tell the foreman that we were going in. We'd be back.

Q. Had you ever had occasion to get off before this time that we're talking about?

A. No, sir.

Q. This was the first time that you had taken time off since you had been working for Associated Pipeline?

A. Yes, sir.

Q. At the time that you left, was that at the request of Mr. Moore?

A. Yes, sir.

Q. Did he tell you that he wanted to —he had to go to a union meeting, I believe you said, and he wanted you to drive him?

A. Well, he said he wanted me to take him in. He didn't say he wanted me to take him to a union meeting. I don't remember him telling me that, but he wanted me to take him in so he could go to a union meeting.

(Nugent, deposition pages 24–25).

Nugent stated that no one with Associated asked him to drive Moore, that he understood he would not be paid for time away from the barge, and that he was not reimbursed for gasoline or automobile maintenance (Dep. pages 29–30).

It is apparent as the Fifth Circuit noted in *Moore*, "when Nugent left the barge, he left the scope of his employment relationship and the employer barge was no longer responsible for his actions."

Summary judgment granted as prayed for.