GUIDRY, Judge
(dissenting).
My brethren of the majority determine that defendants should prevail because their “Dealer Underlying Agreement” and agreements of personal guaranty executed in favor of plaintiff do not apply to the Harrison transaction. The majority reasons that as a result of certain representations made to defendants by a Mr. Russ King, C.I.T. District Sales Manager, the agreements were, in effect, amended so as to exclude the Harrison sale from coverage thereby. I can agree that there is a reasonable basis on which to found the conclusion that there was a representation made, or at least participated in, by Mr. King to the effect that defendants would not be responsible under their agreements with C.I.T. in the event of default by the Harrisons; however, I differ with my esteemed brethren as to the effect of such representation on the liability of defendants to Mr. King’s principal, C.I.T.
Mr. Robinson, in testifying concerning the representations made to him by Mr. King, stated as follows:
“Q. . . . did you discuss with Mr. King the uh — business of handling paper for a Treasure Mobile Homes?
A. Yes sir.
Q. Would you tell the court what the discussion was ? What was said between the two of you?
A. . . . Called me and asked me if I would be adverse to running some paper through Murray Mobile Homes. He said he had talked to Mr. Murray and Mr. Murray had gave him a negative uh — with the exception of my approval; *505 that Mr. Murray didn’t know the people that handled the lot and etc. and that I would have to .
Q. Let me interrupt you Mr. Robinson, you — said ‘running some paper’, you mean Treasure Mobile Homes?
A. Yes sir, some Treasure Mobile Home paper, so I told Mr. King that I’d be — that I was having a meeting in Baton Rouge with some dealers uh— in the near future and that I’d be glad to talk with him on it, and he and I went aside at this meeting and uh — he told me he said, ‘now we have — we have been considering doing business with Treasure Mobile Homes; as of now there was uh — we haven’t gotten it approved. There is a partner that’s involved that had some adverse uh — dealing with C.I.T. before and we gonna have to get him out of the picture before we can get the — get them approved uh— but we are working on it, but we want to know if uh — we got a uh — we got a deal that we feel like that uh — we could run some paper uh — we could sell if we had somewhere to run the paper,’ and I asked him as to what our responsibilities would be and I told him that I would — did not want to be responsible for any service and that I definitely didn’t want uh — Mr. Murray involved in the transaction because I didn’t want anything to affect him adversely uh — as a local dealer and uh — that I would be willing uh — to—as long as it wasn’t a recourse deal and we all understood it, as long as we wasn’t responsible for any service or any of the (inaudible) paper, I’d be glad to process the paper work as a matter of routine . . '
There is nothing in the record to even suggest that anyone connected with C.I.T., other than Russ King, knew of the plan concocted by King, Robinson, Murray and Everett, to run sales generated by Treasure under Murray’s name in order to secure C.I.T. financing.
In his negotiations with the defendants Mr. Russ King, although an employee of C.I.T., was clearly acting on behalf of his employer-principal as the latter’s agent. It appears to be rather well established that a servant may possess the qualities of an agent and that a principal-agent status can exist within the framework of an employer-employee relationship. Allen v. Cochran, 160 La. 425, 107 So. 292, 50 A.L.R. 459; La Parie v. Totora, 62 So.2d 658, La.App.; 2A C.J.S. Agency § 16, pp. 577-580; Edgar Frank Blanchard et al. v. Sam Ogima et al., 253 La. 34, 215 So.2d 902. A third party who deals with an agent is required to determine whether or not the contract about to be consummated comes within the agency and will or will not bind the agent’s principal. R.C.C. Article 3021; Federal Insurance Co. v. C. & W. Transfer & Storage Co. Inc., 282 So.2d 563, La.App.; Carey Hodges Associates Inc. v. Continental Fidelity Corp., 264 So.2d 734, La. App.; Builders Center, Inc. v. Smith, 228 So.2d 245, La.App. There is absolutely nothing in the record to even suggest that Mr. King had the authority, from his principal, C.I.T. to abrogate or modify the previous agreements entered into between Robinson, Murray and C.I.T. I believe that it is clear that he did not have such authority and that when he undertook to except the Treasure sales run through Murray’s Mobile Homes from the guarantee agreements signed by defendants, this was clearly an act outside the scope of his agency or an act unauthorized by his principal.
It can be argued that King had apparent authority to act on behalf of C.I.T. Apparent authority is a principle of estoppel, which operates in favor of third persons seeking to bind a principal to an unauthorized act of an agent; such result is fair and equitable in such context since third persons, who are not privy to the actual terms of the agency agreement, must rely entirely on the indicia of authority with which the agent is vested. Broadway v. All Star Insurance Corp., 285 So.2d 536, La. *506 App.; LSA-R.C.C. Arts. 1811, 1816, 1818; Ebert v. Babin, 200 So.2d 672, La.App.; International Union of Operating Engrs. Hoisting and Portable Local 406, AFL-CIO v. Guy Scrogging Inc., 168 So.2d 724, La.App., writ refused, 247 La. 258, 170 So. 2d 511.
In order for the doctrine of “apparent authority” to apply it must be established that the principal made manifestations to the third party and that the third party reasonably rely on the agent’s purported authority as a result of the manifestations of the principal. Krautkramer Ultrasonics, Inc. v. Port Allen Marine Service Inc., 248 So.2d 336, La.App.
When a third person seeks to bind a principal for the unauthorized acts of the agent under the doctrine of apparent authority, it must be established that such third person had no knowledge of or reason to believe that that agent’s acts were without authority. As set forth in 2A C.J.S. Agency § 158, p. 794:
“The question involved is no longer what authority was actually given or was intended by the parties to the agency agreement, but resolves itself instead into the determination of what powers persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe him to have on the basis of conduct of principal and agent in their business relationships.”
It seems clear to me that the doctrine of apparent authority has no application in this case because defendants purported reliance on the representations of King were not reasonable but rather totally unreasonable. Defendants were aware that King’s principal did not want to do any business with Treasure Mobile Homes. The very reason for running sales generated by Treasure through Murray was to deceive the principal. Defendants along with Russ King participated in this deception. Defendants, under the circumstances, should not now escape responsibility by urging that their reliance on the representations of plaintiff’s agent was reasonable.
Under the circumstances I would determine that the “Dealer Underlying Agreement” and personal guarantees signed by defendants apply to the Harrison contract and would render judgment in favor of plaintiff.
For the above and foregoing reasons I respectfully dissent.