KLEES, Judge.
This appeal arises from the institution of a wrongful death action. Plaintiff, Ausek-lis Ozols, individually and on behalf of his three minor children, Saskia, Aija and Charlotte, filed suit to recover damages for the wrongful death of his wife, Gwendolyn Ozols. Included as defendants were Eddie Kent, the alleged tortfeasor; Vada Mary Irving, the owner of the gun and the house from which the gun was fired; the owner of the store from which Mrs. Irving pur *720 chased the gun; the manufacturer of the gun allegedly fired; and the distributor of the gun in question. Prior to trial, plaintiffs’ claims against the manufacturer and distributor were dismissed with prejudice. After a trial on the merits, the trial court directed a verdict in favor of the vendor of the gun dismissing plaintiffs’ claims. The trial court further dismissed plaintiffs’ claims against Mrs. Irving.
Plaintiff, and each of the three children were granted judgment against defendant Eddie Kent.
Plaintiffs appeal arguing that the trial court erred in dismissing their claims against defendant Vada Mary Irving. Plaintiffs allege that defendant, Vada Mary Irving, is liable for the wrongful death of Gwendolyn Ozols under Civil Code articles 177, 2315, 2316 and 2320. We disagree and affirm.
Mrs. Gwendolyn Ozols was shot and killed on April 12, 1980, in the living room of her residence at 717 Dufossat Street, New Orleans. Police investigations following the incident revealed that the bullet which killed Mrs. Ozols had been discharged from a gun fired by Eddie Kent through the second story window of a neighboring house located at 5127 Laurel Street; both the house and gun were owned by Mrs. Irving. Eddie Kent was temporarily living with his aunt at the time of the incident.
Kent testified that while his aunt was away from home on the morning of April 12, 1980, he unlatched the door to her bedroom and retrieved the gun from the night stand. He returned to his bedroom on the second floor, unloaded the gun, and went downstairs momentarily. He returned to the second floor, reloaded the gun, pointed it out of the second story window, and slapped the chamber shut. At that moment the gun discharged.
In its reasons for judgment, the trial court stated that imposition of liability on Mrs. Irving under any of the theories presented by the plaintiff was not substantiated by a preponderance of the evidence presented at trial. We conclude as did the trial court that the plaintiffs have failed to meet their burden of proof as required under Civil Code articles 177, 2315, 2316 and 2320.
Civil Code articles 2315[1] and 2316[2] establish the general negligence principle that one is responsible for damages caused by his acts and omissions. To recover damages under these articles, a plaintiff must prove that the defendant had a duty to the plaintiff, that the defendant breached this duty, and that the breach caused injury to the plaintiff. Seals v. Morris, 410 So.2d 715 (La.1981) on remand 423 So.2d 652 (La.App. 1st Cir.1982), writ granted in part 433 So.2d 686 (La.1983); Roberts v. State, Through Louisiana Health and Human Resources Administration, 404 So.2d 1221 (La.1981); Straley v. Calongne Drayage and Storage, Inc., 346 So.2d 171 (La.1977), on remand 350 So.2d 1231 (La.App. 4th Cir.1977). The record in the present case is devoid of any evidence that Mrs. Irving breached any duty she may have had towards the plaintiffs. Mrs. Irving was absent from her home at the time of the fatal shooting. The gun in question was purchased by Mrs. Irving for her own self protection. The gun was for her use only. Eddie Kent was never given permission to use the gun. Further, when Mrs. Irving was not at home, or when she had guests, the door to her bedroom remained latched to prohibit entry to anyone. On the day of the incident, Mrs. Irving’s bedroom door was latched. Eddie Kent unlatched the door and retrieved the gun without Mrs. Irving’s permission.
Plaintiffs argue that Mrs. Irving, as owner of the gun, had the duty to take proper *721 precautions against its unauthorized use. Duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable person under like circumstances. Roberts, supra. The record reveals that Mrs. Irving acted as a reasonable prudent person in the safe keeping of the gun. Mrs. Irving clearly did not breach this duty owed by her to the decedent.
Plaintiffs also argue that the defendant, Mrs. Irving, is strictly liable for the acts of Eddie Kent under Civil Code article 2320.[3] This article provides that an employer is vicariously liable for the acts of his employees committed within the course and scope of their employment. An employee is one who offers his services for a price. He is an integral part of his employer’s business and must submit to control of his conduct and time to his employer. Roberts, supra; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968).
There is no evidence to suggest that Eddie Kent was employed by Mrs. Irving. Kent, Irving’s nephew, had volunteered to stay with his aunt who lived alone. She had been the recent victim of an assault and he intended to offer her security. No compensation was afforded Kent for his services nor had Mrs. Irving compensated him for any other service. Further, the evidence shows that Mrs. Irving lacked any control over her nephew’s activities. The plaintiffs have not proved that Eddie Kent was an employee of Mrs. Irving, and thus, liability under Civil Code article 2320 can not be imposed.
Civil Code article 177[4] provides that the owner of building is absolutely liable for damages incurred from anything thrown out of the building into the street. Plaintiffs contend that Mrs. Irving, as owner of the house from which the gun was discharged, should be found absolutely liable for the wrongful death of decedent, Gwendolyn Ozols. Plaintiffs rely on the Louisiana Supreme Court decision in Simmonds v. Southern Rifle Club, 52 La.Ann. 1114, 27 So. 656 (1900). In Simmonds, a rifle club was held liable for injuries to a child struck by a bullet fired from the club’s premises by one of its members or a guest. Club members and their guests were firing in the direction of a parapet which, had it been perfectly sound, would have stopped all the bullets. However, the parapet had many bullet holes in it, and the wood had rotted. The child was playing in her father’s yard, directly in the line of fire, about a hundred feet on the other side of the parapet at the time of the incident. The Court stressed the foreseeability of such an accident occurring; it stated that “It is not beyond the range of possibility that [the bullet] may have struck the parapet at a point where it had been already partially perforated by one or more bullets, and where the wood had become rotten by reason of the letting of the rain and air into the hole thus made.” 27 So. 657. In Simmonds, the members of the rifle club frequently had target practice in the building. It would not be an abnormal occurrence for a stray bullet to come from the building. Such could happen during the daily business of the club.
Judge Wisdom, writing for the U.S. Fifth Circuit Court of Appeals, recognized that
“The pattern of the Chapter and logic of the Codal arrangement suggest strongly that Article 177 was never intended to regulate broadly the duties of the owner of a building. The law arose out of a special situation characteristic of urban *722 communities in which citizens on the streets were exposed to hazards associated with the absence of plumbing, dispose-alls, and garbage collectors. The master is liable because of the general duty to superintend and to police his premises and the general duty arising from the doctrine of respondent superior ...” Williams v. Employees Liability Assurance Corp., Ltd., 296 F.2d 569, 574 (5th Cir.1961), cert. denied, 371 U.S. 844, 83 S.Ct. 76, 9 L.Ed.2d 80 (1962).
Clearly, the hazards envisioned by the authors of the codal article include those which arise from the daily operation of the building. The record in the present case reveals that the accident did not result from the daily operation of Mrs. Irving’s home but rather was a single, isolated occurrence. The discharge of a weapon is not a reasonable foreseeable event in the daily operations of one’s home. Therefore, absolute liability will not be imposed upon Mrs. Irving as the incident in question is outside the scope of Civil Code article 177.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.

. Liability for acts causing damages; survival of action
A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repairs it.

. Negligence, imprudence or want of skill
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.

. Acts of servants, students or apprentices
Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed.
Teachers and citizens are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

. Master’s Liability for things thrown from house into street
The master is answerable for the damage caused to individuals or to the community in general by whatever is thrown out of his house into the street or public road, and inasmuch as the master has the superintendence and police of his house, and is responsible for the faults committed therein.