STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-198 consolidated with 11-199

JACKIE R. GONZALES, ET AL.

VERSUS

SHELTER MUTUAL INSURANCE CO., ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 232,822 C/W 232,632
HONORABLE DONALD THADDEUS JOHNSON, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED.

Barry Ray Laiche
Patrick B. Sadler
Provosty, Sadler, deLaunay, Fiorenza & Sobel
237 S. Washington St.
Marksville, LA 71351
(318) 253-4435
Counsel for Plaintiffs/Appellants:
Jackie R. Gonzales
Ruby Gonzales

Steven D. Crews
Corkern, Crews, & Guillet, L.L.C.
P. O. Box 1036
Natchitoches, LA 71457-1036
(318) 352-2302
Counsel for Defendant/Appellee:
Travis Broadway

**David A. Hughes**
**Hughes Law Firm, APLC**
**P. O. Box 1831**
**Alexandria, LA 71309-1831**
**(318) 443-4090**
**Counsel for Defendants/Appellees:**
**Shelter Mutual Insurance Co.**
**Rayburn Smith**
**Emily Smith**
**Jeremy Richerson**
**S&S Cattle Company, Inc.**

**John E. McAuliffe, Jr.**
**Attorney at Law**
**P. O. Box 5900**
**Metairie, LA 70009**
**(504) 840-4900**
**Counsel for Defendant/Appellee:**
**State Farm Fire & Casualty Co.**

**GREMILLION, Judge.**

Jackie R. Gonzales and his wife, Ruby Gonzales, individually and on behalf of their minor children, appeal the grant of summary judgment in favor of defendant, Travis Broadway, dismissing their demands against Broadway. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Broadway raises cattle in Echo, Louisiana. He intended to sell some cattle and, some date before December 10, 2007, contacted Jeremy Richerson, a solicitor who arranges for the sale of cattle by Rayburn Lee Smith. Smith is a representative of both Red River Livestock Auction in Armstead, Louisiana, and Superior Livestock Auction of Fort Worth, Texas, and Brushy, Colorado. Smith pays Richerson a commission on the cattle sold.

Richerson and his brother arrived at Broadway's ranch and helped Broadway take the cattle to Rush Farms, which Smith leased. Broadway left Rush Farms once the cattle were delivered. Broadway paid Richerson for gathering and loading the cattle at his ranch, and unloading the cattle at Rush Farms.

Once the cattle were unloaded at Rush Farms, they were sorted and tagged by Richerson and his brother. The cattle were loaded onto a cattle trailer for transport to the sale barn. As this was taking place, one calf fell and was trampled by other cattle. Richerson and his brother thought the calf was dead and, to facilitate the loading of the remaining cattle, dragged it outside the pen, up a chute, and into an open yard.

The calf was not dead, however. At about 7:00 p.m., approximately two hours after Broadway had left Rush Farms, it wandered through an open gate and onto Louisiana Highway 1, where it was hit by a vehicle driven by Robert T.

Lamelle. Mr. Gonzales's vehicle then struck the calf. The open gate was located from between 300 yards to one-half mile from the highway.

The Gonzaleses filed suit against several defendants, including Broadway. Broadway filed a motion for summary judgment. The Gonzaleses opposed the motion, which the trial court granted. This appeal ensued.

## ASSIGNMENTS OF ERROR

The Gonzaleses assert generally that there existed genuine issues of material fact precluding summary judgment. Specifically, they point to three: 1) Broadway should be held liable for his own negligence in failing to close the gate as he left Rush Farms; 2) Richerson was acting in furtherance of Broadway's enterprise as to render Broadway vicariously liable for Richerson's negligence; and, 3) Richerson was an employee of Broadway.

## ANALYSIS

The law of summary judgment is so ingrained as to require no recitation. *See* La.Code Civ.P. arts. 966 and 967. Summary judgments are reviewed de novo by courts of appeal. *Louviere v. Ace Hardware Corp.*, 05-259 (La.App. 3 Cir. 11/2/05), 915 So.2d 999.

The Gonzaleses assert that Broadway is liable for his independent negligence in violating Louisiana Revised Statute 3:2803(19), which prohibits the owner from knowingly, willfully, or negligently permitting his livestock to go at large upon Louisiana Highway 1 from its intersection with U.S. Highway 190 (near Erwinville) to Shreveport. The area of Highway 1 where the Gonzales accident occurred is undisputedly within the proscribed area. The Louisiana Supreme Court has held that when livestock are struck upon a "stock law" highway, the owner is saddled with a presumption of negligence and must demonstrate not only that he took all reasonable precautions, but also the he is free from fault by

2

showing the means by which the animal escaped. *See Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. This presumption of negligence precludes application of the shifting burden of production found in Louisiana Code of Civil Procedure article 966(c)(2).

Broadway has unequivocally demonstrated the means by which the animal escaped. It was trampled by other cows as it was being unloaded. Richerson thought it was dead and dragged it to the side. The animal revived and wandered a considerable distance onto Highway 1. When Broadway left Rush Farms, the cattle were inside an enclosure and were under the supervision of Richerson. Had the calf not been trampled and removed from the enclosure, it would not have wandered onto the highway. The only real question about Broadway's independent negligence is whether it was negligent for him to leave Rush Farms without closing the main gate to the facility behind him.

When Broadway arrived at Rush Farms, the main gate was open. The farm was leased by Smith. Smith's deposition makes it clear that while ranchers like Broadway would deliver their sale cattle to the farms, their control over the cattle and, more importantly, the facilities ended at that point. Only Richerson had permission from Smith to use the pens at Rush Farms. Smith also testified that the gate was not intended to retain cattle, but to limit vehicle access to the farms. The gate controls a road leading into the farms, and that road is lined on both sides by fences. The last person to leave at the end of the day was to close and lock the gate.

Under these circumstances, we find that Broadway has demonstrated that he was free from independent fault. When he left the cattle under Richerson's control, they were secured within an enclosure from which they could not escape under normal circumstances. Only when this calf was removed from the enclosure—two hours after Broadway left— did it gain access to the road. And the calf still had to

3

wander a quarter to a half mile before it even reached the main gate to the farms. Smith, as the proprietor of Rush Farms, controlled the main gate.

The remaining issues are the plaintiffs' contentions that Broadway was vicariously liable for Richerson's actions either under an "enterprise liability" theory or as Richerson's master under Louisiana Civil Code article 2320. The Gonzaleses cite *Morgan v. ABC Manufacturer*, 97-956 (La. 5/1/98), 710 So.2d 1077 as authority for liability under the enterprise theory. Specifically, the *Morgan* decision quoted from *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 476 (La.1990), the proposition that a "master's vicarious liability for the acts of its servant rests. . . in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may be fairly said to be characteristic of its activities." However, in *Morgan*, the supreme court was establishing the context for determining whether a temporary service was vicariously liable for the tort of a worker it had procured for its customer. The temporary service's stock in trade was providing employees for its customers. Both the temporary service and its customers exercised "contemporaneous control" over the employee; therefore, it was "reasonable that considering the overlapping control and shared financial interest that they share liability." *Morgan*, 710 So.2d at 1083. Because the temporary service's product was the labor it provided, it should bear the risk associated with its product.

Rather than enunciating a novel theory for imposing vicarious liability, *Morgan* presents an analytical framework for determining whether, in a master-servant relationship, a particular activity was the kind for which liability should be imposed. The fundamental basis for liability remains Civil Code article 2320. In *Ermert*, for example, the issue was whether a corporation was vicariously liable for its employee, who negligently discharged a shotgun inside a hunting camp. The

4

supreme court did not draw upon enterprise liability analysis to determine whether the negligent actor was a servant, but whether the recreational pursuit at the hunting camp was the sort of activity for which the master could be held responsible. In both *Morgan* and *Emert*, the existence of a master-servant relationship was a given.

That is not the case here. We must begin our inquiry with a determination of whether a genuine issue of material fact exists regarding the existence of a master-servant relationship between Broadway and Richerson. In this inquiry, the shifting burden of production previously discussed does come into play. *See* La.Code Civ. P. art. 966(C)(2).

Broadway submitted an affidavit in which he attested that Richerson was not his employee. Further, at the time of the accident, no employee or servant of his was present at the site. Richerson testified in his deposition that he received a call from Broadway, who wanted to sell some cows. Richerson brought two trucks and trailers and at least six helpers to Broadway's ranch. Broadway had three trucks and trailers and three of his own hands. Broadway paid Richerson for the loading and transport of the cattle to Rush Farms. Once the cattle were delivered to Rush Farms, Richerson had earned his labor fee from Broadway and was working on his sales commission. According to Richerson, Broadway's involvement with the process had ended.

While the supreme court in *Ermert* recognized that vicarious liability between master and servant is seated in the notion that when the master reaps the economic rewards of his servants' labor, he should also expect to absorb the risk that, in the course of that labor, his servants may cause harm, it also recognized that this notion was not a governing principle of tort law. *Id.* at 476. Those governing principles of tort law hold that a servant is one employed to perform

5

services in the affairs of another and whose conduct in the performance of that service is subject to the other's right of control. *Id.*, citing *Blanchard v. Ogima*, 253 La. 34, 215 So.2d 902 (1968). In fact, *Blanchard* provides an almost perfect framework within which to analyze the present matter.

Ogima was a "bird-dog" car salesman, which meant that he essentially sold cars on consignment. He retained all of the purchase price above an agreed amount. He had taken possession of a Volkswagen from Russo. Ogima parked the Volkswagen on an incline. The Volkswagen rolled downhill and crushed Blanchard against another vehicle. Blanchard sued Ogima, Russo, and Russo's insurer. The trial court dismissed Russo and his insurer. The fourth circuit affirmed the dismissal. The supreme court agreed to hear the case and affirmed.

The supreme court noted that the right to control another's actions is determinative of whether the one is the master of the other. The only control Russo exercised over Ogima was fixing the amount of his compensation. Ogima was neither a servant nor an independent contractor, but Russo's agent. An agency relationship does not form the basis for vicarious liability. All servants may qualify as agents, but not all agents qualify as servants.

When Broadway entrusted the cattle to Richerson's care, it was like Russo handing over the keys of the Volkswagen to Ogima. His control over Richerson's actions ended. Richerson was not Broadway's servant. No vicarious liability attached to Richerson's actions in sorting and tagging the cattle.

## CONCLUSION

The Gonzaleses sued Broadway alleging both his independent negligence and his vicarious liability for Richerson's alleged negligence. Our de novo review of the evidence supporting and opposing the motion for summary judgment demonstrates no genuine issue for trial on either ground of fault. We find that

6

Broadway took every reasonable precaution when he left Rush Farms with his cattle in the care of Richerson inside a corral or pen located a quarter to a half mile from Highway 1. He was free from any independent fault.

Richerson acted as Broadway's agent from the moment he took custody of the cattle at Rush Farms. Broadway's control over Richerson's actions ended at that time.

The judgment of the trial court in favor of Travis Broadway is affirmed. All costs of this appeal are taxed to appellants, Jackie R. Gonzales and Ruby Gonzales.

**AFFIRMED.**